### LAVENDER, ad, et al. vs. ABBOTT, ad.

1. VENDOR'S LIEN. *Passes by descent.*
   The vendor's equitable lien for purchase money descends to the heir in the same condition as the ancestor held it.
2. —— *Waiver of.*
   The taking of personal security will not, of itself, displace the vendor's equitable lien.

APPEAL from *Arkansas* Circuit Court in Chancery.

Hon. P. C. DOOLEY, Circuit Judge.

*Cockrill* for appellants.

The note never was secured by a lien on the lands sought to be subjected. 2 Washburne R. P., 91.

John Wells is an assignee of the note. Co. Lit., sec. 12; 2 Blacks Com., 241; 2 Redf. Wills, 356. Vendor's lien does not pass to him. *Shall* v. *Biscoe*, 18 Ark., 142; *Williams* v. *Christian*, 23 Ib., 255; *Simpson* v. *Montgomery*, 25 Ib., 372; *Hecht* v. *Spears*, 27 Ib., 229; Ib., 518.

Abbott's testimony concerning conversations with DuBose is incompetent. Const. of 1868, art. 7, sec. 22. *Giles* v. *Wright*, 26 Ark., 476.

Lavender, adm'r, et al vs. Abbott et al.

Lien lost by taking sureties. 2 Wash. R. P., 91. Nor will it prevail against a judgment creditor. *Bayley* v. *Greenleaf*, 7 Wheaton (U. S.), 416; Mason, 192; *Duncan* v. *Johnson*, 13 Ark., 190; *Hecht* v. *Spears, supra.*

The judgment of the Probate Court, classifying the claims in the third class, is conclusive on the point of their being liens when probated. Gantt's Digest, secs. 98 and 113; *Borden* v. *State*, 11 Ark., 519; *Sturdy and Wife, et al*, v. *Jacoway*, 19 Ark., 499; *Tucker* v. *Yell*, 26 Ark., 427.

*L. A.* and *X. J. Pindall* for appellee.

The vendor's lien does not arise from contract; it results from operation of law. Story's Eq., 1217 to 1233; *Jackman* v. *Hollock*, 1 Ohio, 320.

The assignee of the note for value simply holds a personal obligation. *Williams* v. *Christian*, 23 Ark., 257; *Schnebley* v. *Ryan*, 7 G. & J. Md., 126; *Hall* v. *Chick*, 5 Allen, 364.

But the lien remains when the vendor retains a beneficial interest in the note. *Crawley* v. *Riggs*, 29, 558; *Hallock* v. *Smith*, 3 Barb. N. Y., 272; *Moore & Cail* v. *Anders*, 14, 635; *White* v. *Williams*, 1 Paige's Ch., 506. Not lost by taking a note with personal security. Story, 1226.

A waiver of it will not be presumed where doubtful. Story's Eq., 1223-4-6.; *Harris* v. *Hanks*, 25, 514; *Garsen* v. *Green*, 1 Johnson Ch. 309; *Sheppard* v. *Thomas*, 26, 634; *Tierman* v. *Beam*, 2 Ohio, 386 (a case in point); *Barnet* v. *Marle*, 3 Louis, a 602; *Bacchus* v. *Moreau*, 4 Lousa, 314; *Tenda* v. *Jones*, 43 Miss., 792, S. C. 2d Am., 669; Tiffany & Bullard on Trusts and Trustees, 86 *et seq.*

The lien passed to the legatee. Story's Eq., 1220-27. See *Tierman* v. *Beam, supra*, and *Pollexfen* v. *Moore*, 3 Ark., 273. It prevails to vendor's privileges. *Williams* v. *Stuart*, 30 Geo., 210; *Allen & Hill, ex'rs of Shanks* v. *Smith, adm'r*, 25, 498.

It is superior to the equity of a judgment lien. Tiff. & Bull. on Trusts. 88; *Aldrich* v. *Dunn*, 3 Blackf., 250; *Tulleson* v. *Johnson*, 6–7 Ohio, 366; *Peet* v. *Beer*, 14 Ind., 48; *Webb* v. *Robinson*, 14 Geo., 230; *Chance* v. *McWharter*, 26 Ga., 315; Story's Eq., 1228; *Shirley* v. *Sugar Ref.*, 2 Ed. Ch., 505; 1 Lomax, 271–2; Adams' Equity, 314, 153 s. p.

WALKER, J.:

This suit was brought by Abbott as administrator of the estate of John Wells, to enforce an equitable lien upon certain lands, and to subject them to the payment of a note given for part of the purchase money.

There was also a cross bill filed by Charles P. Cochran and others, in which they set up a judgment against the estate of Alfred B. C. DuBose, which they claim to be a lien upon the lands claimed to be subject to the equitable lien of complainant in the original bill, and that their debt was contracted upon the faith that DuBose was the owner of the land, and that it was unincumbered.

The facts, as appear from the pleadings, are that in the year 1857, Samuel Wells, the owner of 480 acres of land, situate in Arkansas county, sold the same to Alfred B. C. DuBose for the sum of $14,700, one-third of which was in hand paid, and for the payment of the residue of the purchase money, DuBose, with Dunn as security, executed to Wells ten notes for $4,900 each, due in 1858 and 1859, in consideration of which Wells executed to DuBose a deed for the land, and DuBose thereupon entered upon and took possession of the land. Soon after this, Wells died having made a will, leaving a widow and children, and divided these notes, or the money when collected, with other property to his children. Under an agreement between the executor of Wells' estate and DuBose, the money due upon the notes was to

be paid by DuBose upon the order of the executor. Upon a settlement of the distributive shares due the heirs, there was found to be due John Wells, a minor son of the testator, the sum of $2,324.50, and an order was drawn by the executor in favor of the guardian of this minor son for that amount. On the 13th October, 1860, the guardian presented the order to DuBose, who took it up, and executed his note for that amount, it being a part of the purchase money due for the land.

John Wells died, and Abbott was appointed administrator of his estate, and has brought this suit upon this state of facts set forth with apt averments, in which he claims a vendor's lien upon the land sold by Wells to DuBose, in part consideration of which the note in suit was given, in liquidation of that much of the original notes executed. DuBose having also died, his administrator and heirs are made parties defendants to the suit.

Defendant Lavender answered and set up in defense, that Wells took personal security for the payment of the notes, and that there is no equitable lien existing on the land. The other defendants answered by attorney.

The plaintiff answered the cross bill; admitted that a judgment was rendered in favor of plaintiff in the cross bill against DuBose, but says that more than three years elapsed between the time of the rendition of the judgment and the death of DuBose; that the judgment lien had expired, and had never been revived. He positively denies the allegation that the debt upon which the judgment was rendered was contracted upon the faith of the lands being owned by DuBose. That the debt was contracted seven years before DuBose purchased the land of Wells.

The case was submitted to the court upon the bill and cross bill, and the answers, agreed state of facts and depositions.

The court rendered a decree in favor of the complainant in the original bill for $5,332.81 the amount of the debt and interest, declared a vendor's lien upon the lands, and ordered that they be sold to satisfy the same. Defendant Lavender appealed.

All of the necessary steps to bring the parties before the court appear to have been taken, and to bring the case to a hearing, as well upon the original, as upon the cross bill.

The plaintiffs in the cross bill have not appealed, and it may well be supposed that upon the coming in of the answer of complaint in the original bill and the proof taken to sustain it, they abandoned their suit, because it is evident that under the state of facts, they had no right to interpose their bill for relief.

There is no one claiming as purchaser of the land, nor is there any one except the complainant in the cross bill, who claims to hold a debt contracted by DuBose upon the credit that he acquired as owner of the land, which we have seen was wholly unsustained by the evidence, so that the issue here presented is between the heir of the vendor, against the administrator and heirs of the vendee. And in order to simplify this issue, we may say, at the outset, that the heir must be considered as the representative of the father, with all the rights which under the state of the case would attach to him if living.

This question came before the Supreme Court of Ohio in the case of *Tierman* v. *Beam*, 2 Ohio, 386, in which it was held that if the vendor retained the equitable lien at the time of his death, it descended to his heirs, or passed to his devisee in the condition it was at the time of his death.

*Bispham*, in his principles of equity, 356, says "the equity exists in favor of the legatee whose legacy has been taken in payment of the purchase of an estate in the hands of the heir."

*Story*, 1217, says "the vendor has a lien on the purchase money not only against the vendee and his heirs, and other privies in estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid."

That the vendor has an equitable lien upon the land conveyed by him, for the payment of the purchase money, may be conceded as a settled question in this State, and the courts of all the other States except Maine, Pennsylvania, Kansas, North and South Carolina. The counsel for the appellant is not understood as questioning this right, but insists that in this case the lien was discharged by the vendor, when he took personal security for the payment of the purchase money. The mere fact that the vendee executed a note for the payment of the purchase money with security, is not of itself sufficient to displace the vendor's lien, but is a circumstance with others, to determine what the intention of the parties was at the time the note was executed. The parties to the contract have an undoubted right to contract for additional security without giving up or abandoning that which the law confers. The question as to whether the parties intended to rely upon an independent security is one of fact to be determined like all others from acts and declarations. Bispham, 355, says the lien of the vendor for unpaid purchase money is considered waived if a distinct and independent security for the purchase money is taken, as an illustration of which he instances the taking of a mortgage or other property to secure the payment of the purchase money, or other independent security, a pledge or the like. But, that the taking of such independent security, although an evidence of a waiver, is not conclusive evidence, and, that a mere personal security will not of itself operate as a waiver of the lien. When, however, a bill or note is taken as a payment of the consideration money, in other words, when the security was in part the thing bargained for,

the lien is gone. Story, at page 1224, says: "Generally speaking the lien of the vendor exists, and the burden of the proof is on the purchaser to establish that in the particular case it has been intentionally displaced, or waived by the consent of the parties.

"And if, under all the circumstances, it remains in doubt, then the lien attaches  *  *  *. The taking of security has been deemed no more than a presumption under some circumstances, of an intentional waiver of the lien, and not as conclusive of the waiver, and, if security is taken for the money, the burden of proof has been adjudged to be on the vendee, to show that the vendor agreed to rest on that security, and to discharge the lien."

There are many other authorities to the same effect, and from which we may safely conclude that when an *independent* security, such as a mortgage on other property, a pledge, or where the negotiable note of a third party is taken and endorsed by the vendee, these acts would be held as evidence of an intention to waive the lien rights, but would not be conclusive that such was the intention of the parties. But when the security is not independent, as when a note with security is given to secure the payment of the purchase money, then it is to be held as cumulative, not independent security, and the party who assumes that it was the intention of the vendor, to waive his lien on the land, and rely upon the personal security, must prove such to have been the intention of the parties.

This the defendant has attempted to do by evidence. Winn, a witness for the defendants, stated that in 1856 Wells sold to Du Bose the land in controversy, that he understood that one-third of the purchase money was paid in hand, the balance to be paid in future installments, for which notes were given, was intimate

with the parties at the time the trade was made, and it was witness' understanding that Wells, on taking the notes, demanded and required personal security for their payment; that Dunn went security on the notes; that Wells demanded personal security, because he said it was too slow a process to collect by enforcing a vendor's lien; that DuBose told witness that he preferred giving a lien upon the land, but that Wells insisted on personal security. Witness stated that his means of information were derived from an intimate acquaintance with the parties, and felt confident that he had heard both speak of the transaction in the manner stated by him.

This was all the evidence offered by the defendants.

The plaintiff then read in evidence the deposition of a witness, who deposed that he was present and saw the notes executed; that Dunn and perhaps Smith went on the note as securities. Smith urged Wells to take personal security. Witness remonstrated against it, and told Wells he might lose his lien. Wells was an ignorant man, said he would risk it, but made them promise that, if the personal security failed, he should have his lien. DuBose and Smith both promised that Wells should have his lien on the land. When this conversation took place, the notes were signed but not delivered. Smith had them. When witness remonstrated against taking personal security, Smith told Wells that he (Smith) had been a *crack* lawyer in Memphis, and he knew that personal security on the note would not vitiate the lien.

Wells said that the reason why he wanted personal security was, that he wished to use the notes with his merchants in New Orleans. At this time we were on the porch, DuBose was in the house, and Wells told Smith to call DuBose out, and when he came out, Wells told him that witness thought personal security might invalidate his lien on the land; asked DuBose if he failed

to pay the notes whether he would rob him of his lien. DuBose replied, certainly not. This witness also deposed that he was appointed guardian of John Wells in 1862. That Henry G. Wells had, before that time, been guardian. Witness received the note sued on from him. That in 1867 he called on DuBose for payment of the note, and assigned as a reason why he desired to collect the money, that he then had an opportunity to loan the money on real estate security. DuBose replied that the note was given for land, and was as secure as witness could possibly make it. Witness then left, and soon after called again on DuBose for payment of the note. DuBose told witness that the note was a land note, and was a lien on the part of his farm bought of Wells, and that the lien would hold until the note was paid. Witness, relying upon these representations, permitted the money to remain in the hands of DuBose. That the notes executed by DuBose and Dunn were never paid in the lifetime of Wells. That Halliburton, the executor of the estate of Wells, never collected the notes. That the note in suit was executed by DuBose to Henry Wells, the former guardian for his ward, John Wells, for that much of the original note or debt due by DuBose for the purchase of the land to which John Wells, one of the heirs and devisees of Samuel Wells, deceased, was entitled. That John Wells died intestate, and that plaintiff was administrator of his estate.

This is the evidence in regard to the taking of personal security for the purchase money. And whilst the evidence of Winn strongly tended to prove that the personal security was intended to be given in discharge of the lien upon the land, his testimony must be taken with allowance, when we see that he does not profess to have been personally present, but drew his information from conversations with the parties, and gives his understanding of the agreement from this source. Whilst that of Abbott is

from actual presence when the notes were executed, and again when DuBose was called upon to pay this heir of Samuel Wells the amount due to him, the distinct declaration of DuBose that the note was for the purchase money, and was a lien on the land, leaves the weight of the evidence in favor of the conclusion that it was not the intention of the parties to give personal security on the note as an independent security in lieu of the vendor's lien, but was intended to be, in effect, a cumulative, or an additional security, which the parties had an undoubted right to contract for.

Holding such to be the case, it follows that the vendor's lien was not waived by the personal security given for the purchase money, and that the court below properly decreed in favor of plaintiff.

Let the decree be affirmed and the cause be remanded that the decree may be executed.