TURK, *Appellant*, v. FUNK.

**Priority of Mortgage for Purchase Money.** A mortgage given to a vendor to secure an unpaid balance of purchase money of land and recorded on the same day, has priority of one which is given by* the vendee, before he has concluded the purchase, to a person who furnishes him the money to make the cash payment, notwithstanding the latter is recorded first.

*Appeal from Jasper Court of Common Pleas.*—This case was tried before B. F. GARRISON, ESQ., Temporary Judge.

Suit to foreclose a mortgage given by defendant, Funk, to secure an unpaid balance of purchase money due plaintiff. Defendant Meyers, held another mortgage on the same land which he claimed was entitled to priority. The facts are fully stated in the opinion.

*Henry Flanagan* with whom was *Henry Brumback* for appellant.

1. A deed and purchase-money mortgage given at the same time must be construed together as one contract. Myers took the interest conveyed to him by Funk, subject to any prior equity attached to the premises conveyed. Even though Myers' mortgage had been executed and recorded first, the priority of Turk's could not be affected, for until Turk conveyed to Funk, he had no interest in the land upon which a conveyance could operate. When a vendor of real estate conveys, he has no occasion to examine the records or to inquire about incumbrances created prior to his conveyance. He has the power to protect himself by a qualified or conditional transfer, or by any legal mode of creating a lien, to secure himself for unpaid purchase money. When he conveys and instantly takes a reconveyance as such security no authority is needed to demonstrate the gross injustice of permitting a prior mortgage from intervening to his prejudice. *Morris v. Pate*, 31 Mo. 315; *Dusenbury v. Hulbert*, 59 N. Y. 541. In case at bar both mortgages were recorded at the same time, but Turk's attached to and became a lien upon the whole estate, while Myers' only to the interest which Funk had, which was subject to Turk's mortgage. *Bolles v. Carli*, 12 Minn. 113; *Cake's appeal*, 23 Pa. St. 186; *Van Rensselaer v. Stafford*, Hopk. Ch. 569; *Johnson v. Slawson*, 1 Bailey Eq. 463. 2. It was not the duty of plaintiff to disclose his lien on the land sold, unless interrogated in regard thereto. Meyers knew the plaintiff was the owner and in possession of the land, and if he closed his eyes to facts which he was bound to know, he, and not the plaintiff, must suffer. *Dyer v. Martin*, 4 Scam. (Ill.) 146; *Rice v. Dewey*, 54 Barb. 455; *Dusenbury v. Hulbert*, 59 N. Y. 541.

*Harding & Buler* for respondents.

NAPTON, J.—The only question in this case is that of priority between two mortgages recorded on the same day,

one executed by the vendee of a tract of land to the vendor to secure the payment of part of the purchase money, and the other made by the vendee to the person from whom he borrowed that part of the purchase money required to be paid on the consummation of the trade.

The undisputed facts in this case are very simple. Turk, the plaintiff, agreed to sell Funk, one of the defendants, two pieces of land, one of 100 acres for $1,200, and the other of 20 acres for $1,000. $500 were to be paid by Funk on the first tract, and two notes given for $350 each, payable in one and two years. On the other no money was to be paid down, but two notes were to be given for $500 each, payable in one and two years. The deeds were not to be delivered to Funk until the payment of the $500 and the execution of two mortgages to Turk, including each tract, to secure the payment of the $1,700 due on the contract. The negotiation was conducted by Starr, an agent of Turk, with Funk, some weeks before it was concluded by an interchange of deeds, and, according to the testimony of Funk, the particulars of the trade were communicated by Funk, the vendee, to Meyers, the defendant, from whom Funk expected to get the $500 in order to secure the land. This statement of Funk is, however, contradicted by Meyers, and we will assume it to be false, although its probability is quite obvious. It is certain that on the 2nd day of July, Funk and Starr went to the banking house of Meyers to complete the trade; that the $500 was borrowed of Meyers by Funk, and handed over to Starr along with the two mortgages to secure the purchase money unpaid, and at the same time Starr handed over the deeds of Turk. Which was done first, the two witnesses, who state the occurrence, do not profess to recollect exactly, but it was all done, as they say, about the same time. Both the witnesses agree, however, that when this was done, both Starr and Funk went directly to the recorder's office and filed their deeds about 11 o'clock a. m. of that day. Meyers' mortgage for the $500 he lent to Funk was

then on record. The following is a copy of Meyers' testimony on this point, taken from the record, and is all that is preserved in the record: "I did not agree with Turk to take a second mortgage; I knew nothing about a mortgage to Turk or unpaid purchase money of the land. I paid out the money, got my mortgage and immediately had it recorded; saw the deed delivered after I got my mortgage."

The law applicable to the facts of this case, so far as they can be gathered from the record, seems very plain. According to the statement of Meyers himself, his mortgage was procured from Funk before the title from Turk to him had passed. Indeed, unless both Funk and Starr testified falsely, the mortgage to Meyers must have been made and delivered first, as they both state that as soon as the $500 was paid and the deeds exchanged, they both went straight to the recorder's office, and there is no dispute that Meyers' mortgage was then recorded. It is unnecessary to add that upon these facts Meyers' mortgage could convey only Funk's then interest, which was a right to a deed when the purchase money was secured. In other words, it was subject to the mortgage of Turk.

We have been unable to find any evidence whatever of any fraud practiced by Starr, the vendor's agent, by which Meyers could be misled. Meyers merely states, in general terms, that he knew of no unpaid purchase money or mortgages to Turk. He does not say that Starr informed him that there were none, or that Starr did anything or said anything calculated to lead him to such a conclusion. He does not say that he inquired of any one, Starr or any one else, on the subject, much less does he say that Starr misled him. He evidently never saw the deed from Turk to Funk (indeed it is not in the record) until after Funk's mortgage to him was executed and recorded, for it was never delivered to Funk until after Meyers got his mortgage, nor does he in his evidence so state or even insinuate. He merely makes a general denial of knowledge

concerning unpaid purchase money and mortgages. It was his business to have informed himself about this—it was certainly not Turk's duty to tell him. Turk, or his agent, Starr, had a right to suppose that Meyers was competent to attend to his own interest and lend his money on such terms as suited him.

The judgment of the common pleas court is reversed and the cause remanded, with directions that the common pleas court enter a decree in conformity to this opinion, giving the vendor's mortgage priority. The other judges concur, except Judge NORTON.

REVERSED.