R. M. BRADBURY, Administrator, etc., Respondent, v. JOHN C. DONNELL, Appellant.

Kansas City Court of Appeals, May 3, 1909.

1. **BILLS AND NOTES: Defense: Evidence.** The evidence relating to an alleged defense to a note is reviewed and analyzed and held to be too unsatisfactory and contradictory to have the effect of nullifying a properly executed paper entered into by the free-will of the maker.

2. ———: **Vendor's Lien: Waiver: Mortgage.** A mortgage for the purchase money is not a waiver of the vendor's lien but a merger thereof into higher security and waives only the right to enforce it as such.

3. ———: ———: ———: ———: **Agent.** Nor will a mortgage for part of the purchase price necessarily destroy the lien for the balance of such price; and such lien may be kept alive by agreement to that effect.

4. ———: ———: ———: ———: ———: **Evidence.** On the evidence the vendor's lien was retained for a part of the purchase money not included in the mortgage.

Appeal from Nodaway Circuit Court.—*Hon. William C. Ellison,* Judge.

AFFIRMED.

*B. R. Martin* and *Culver & Phillip* for appellant.

(1)   Where a mortgage is taken for a portion of the unpaid purchase price, the law does not imply a vendor's lien to secure the payment of the remainder of the purchase price.   Delossus v. Poston, 19 Mo. 428-429; Emison v. Whittlesey, 55 Mo. 259; Boyer v. Austin, 75 Mo. 82; Adams v. Buchanan, 49 Mo. 64; Winer v. Investment Co., 125 Mo. 543; Brisco v. Callahan, 77 Mo. 134; Nixon v. Knollenberg, 92 Mo. App. 25.

*W. H. Crawford* and *L. C. Cook* for respondent.

(1)   Donnell has no interest in the proceeds of the sale of this property, because, if for no other reason, whatever interest he might have had in the property itself, was fully settled as a part of the sale of the property to Donnell and Kuchs.   (2)   The law in this case, as in all other cases between the vendor and the vendee for the unpaid purchase price of land sold, and wherein the rights of third parties are not involved, the vendor's lien exists unless it has been intentionally waived by the parties; that the question of waiver or no waiver is wholly one of intention; Story v. Patton, 61 Mo. App. 12; 1 Perry on Trusts (2 Ed), Vol. 1, sec. 237; Mims v. Railroad, 3 Kelly 333; Campbell v. Baldwin, 2 Hump. 248; Kyles v. Trait, 6 Gratt. 48; Tierman v. Thurman, 14 B. Mon. 277; Sears v. Smith, 2 Mich. 243; Daughaday v. Paine, 6 Minn. 443; Partridge v. Logan, 3 Mo. App. 509; Lawson v. Spencer, 81 Mo. App. 169.

ELLISON, J.—Plaintiff is the administrator of his deceased wife's estate and prosecutes this action to obtain judgment on a promissory note for two thousand dollars belonging to her at her decease, and to enforce

a vendor's lien on real property in Maryville for the amount of the judgment asked to be rendered. The plaintiff prevailed.

It appears that plaintiff, before Mrs. Bradbury's death, together with defendant and C. C. Graves, who was Mrs. Bradbury's brother, entered into what may be termed a partnership for the purpose of erecting an opera house in Maryville. Mrs. Bradbury had inherited from her father an estate of about twenty-five thousand dollars and she owned a lot in Maryville. She was not connected with the origin of the opera house project, nor was she a member of the partnership. But yet it was built on her lot and most of the money to build it was obtained from her. Soon after getting the building under way all three partners became discouraged, especially Graves. He being the only one of the three who had any money, the project would then have stranded but for plaintiff obtaining the greater part of the money from his wife with which to pay for it. This amounted to sixteen or eighteen thousand dollars, not including her lot. The remainder, about five thousand dollars, being received from subscription by public spirited citizens. When the building came to completion it appeared certain that the venture was unfortunate and efforts were made by plaintiff to sell it at a greatly reduced price. Finally it was sold to this defendant and Richard Kuch for twelve thousand five hundred dollars. The terms of the sale at first were eight thousand five hundred dollars in cash, and four thousand dollars in notes; but as finally arranged eight thousand dollars in notes were made to Mrs. Bradbury secured by deed of trust on the property and five hundred dollars paid in cash. That left four thousand dollars, for which Kuch was to execute his individual note for two thousand dollars to Mrs. Bradbury and defendant was to execute his note to her secured by a vendor's lien on the property, for the remaining two thousand dollars. This last-mentioned note is the one here involved. In executing these two notes last

mentioned they were made in the name of plaintiff by the mistake of the scrivener, instead of to Mrs. Bradbury, and plaintiff immediately indorsed them over to her.

Putting aside any question of law, to which we will refer further on, it is difficult to discover from the evidence any defense to the action which would be at all consistent with fair dealing and justice. The facts have been found by the trial court to be with the plaintiff and, under a rule in that regard, we should feel constrained to defer to that finding. But the plaintiff really does not need the aid of that rule. The weight of the evidence, as well as the patent circumstances appearing in the face of the case, readily determine it against the defendant. The haphazard and loose nature of the original dealing between the three parties, Graves, the plaintiff and defendant, and afterwards between the plaintiff and defendant, make it difficult to set out. But if we put aside the vagueness and inconclusiveness of much of it, there yet remains enough of matters, either conceded or undisputed, to leave defendant without standing. He claims that he, Graves and plaintiff were partners and concedes that Graves and plaintiff contributed the money (except the public subscription) which went into the building, and that he did not "put up a cent", not "a farthing." When asked about Mrs. Bradbury's lot and how that was to be accounted for, he said that plaintiff put that in too.

Not having paid anything in the partnership venture, the question naturally arises what is his claim to an interest in a *losing* transaction based upon, and why, if he had such claim, did he give the note in controversy instead of demanding a subtraction from the purchase price of the premises? His answer and explanation of this is that he had an interest in the money which the public subscribed to the enterprise, and he devoted his time in looking after the construction of the building; and that he gave the note in controversy so as to deceive Kuch, his partner in the purchase. He was asked if his

time was not engaged in his employment by an electric light company and explained that he must have encroached upon the company's time. Asked why he would deceive Kuch, he stated that he did it at plaintiff's request in order that he, Kuch, might not think he, defendant, was getting off with less payment than Kuch was making. Notwithstanding this evidence given by the defendant, he admitted in other parts of the record that he owed the note. In answer to a question he stated that he owed the note "in a sense", that is, "I owe that note and they owe me—the company owes me for my interest." "And whatever my interest in that (opera house) was was to be applied on that note." "Whenever this thing (the sale) was consummated and closed up and the bills of the opera house company paid, we were going to get together and settle." How a settlement of a partnership affair conceded to have lost about eight thousand dollars could result in any profit to one of the partners, especially the one who did not contribute "a farthing" towards it, goes beyond our understanding. Defendant attempted an explanation, in answer to questions by the court, in which he made the extraordinary claim that if there was a profit he should receive his share and if there was a loss he should still get his share of what was received, while the others would lose what was subscribed by citizens and the several thousand dollars cash they invested besides.

Plaintiff stated in testimony that when it was ascertained that defendant had nothing to invest in the enterprise he dropped out and all pretense of a partnership interest ceased. That when a sale was about to be made to Kuch and defendant, he set a price to them of fourteen thousand dollars, and in consideration of putting an end to any claim of defendant to an interest for his work, etc., the price was fixed at twelve thousand five hundred dollars, and the notes were then agreed upon and executed, thus determining and settling the whole matter.

We have necessarily omitted much of the detail of the evidence, but have given sufficient of the substance of the main points to make clear the view we entertain of the facts. We may however remark that a more extended recitation of the evidence would only add to the unreasonable character of the defense put before us. We cannot, with any regard to the sanctity of contracts, allow the unsatisfactory and contradictory matters advanced to have the effect of nullifying a properly executed written paper entered into by the free will of the maker.

The legal question presented is whether plaintiff waived the vendor's lien for the money evidenced by the note in suit which plaintiff transferred to Mrs. Bradbury as already explained. Defendant contends that taking the mortgage for a part of the purchase money was a waiver. Plaintiff insists that the question of retention or waiver of a vendor's lien by taking a mortgage for part of the purchase price, is a question of intention. Defendant answers this by the claim that such intention must be reserved in the mortgage itself and not being so reserved in the mortgage given in this case, it is lost. Defendant cites in support of his position the cases of Delassus v. Poston, 19 Mo. 425; Emison v. Whittlesey, 55 Mo. 254; Boyer v. Austin, 75 Mo. 81; Winn v. Lippincott Investment Co., 125 Mo. 528; Nixon v. Knollenberg, 92 Mo. App. 20; and Briscoe v. Callahan, 77 Mo. 134. The last case does, in terms, affirm that taking a mortgage for purchase money waives the vendor's lien "unless it is expressly stated in such mortgage or deed of trust that such lien is not waived." The foregoing case of Emison v. Whittlesey is cited by the court in support of that announcement. But neither that case, nor any other, supports it in its full breadth. The other cases cited by defendant lay down the rule that taking a mortgage for a part of the purchase money waives the lien unless there is an agreement that it shall not, but they do not require that such agreement shall

appear *in the mortgage*. The question is vital in this case for it is conceded the mortgage here involved did not reserve the vendor's lien, and we would therefore feel bound by Briscoe v. Callahan notwithstanding it is out of line with other cases decided prior thereto, were it not for the fact that the Supreme Court in the later case of Winn v. Lippincott Investment Co., *supra,* restated the rule as understood prior to Briscoe v. Callahan, wherein there is no requirement that a retention of the lien shall be set forth in the mortgage. No sufficient reason can be assigned why the mortgage itself should reserve the vendor's lien: on the contrary, good reason shows it not to be necessary. In the proper sense a mortgage for a part of the purchase money does not waive the vendor's lien for any of the purchase price embraced in the mortgage, but merely merges it in the mortgage as the higher security and only waives the right to enforce it as such. That it is not meant in that class of cases to say that the lien itself becomes extinct by taking a mortgage is made manifest by the fact that it is recognized in contests for priority between a mortgage taken by a vendor and one taken by a third person, even though the latter was to obtain money to pay on the purchase. The vendor's mortgage will prevail on the idea that his lien, as vendor, has not been extinguished by the mortgage, but has merely been transferred to or set up in the mortgage—merged therein—and through which it will, practically, be upheld. [Morris v. Pate, 31 Mo. 315; Linville v. Savage, 58 Mo. 248; Rogers v. Tucker, 94 Mo. 346; Hannah v. Davis, 112 Mo. 599; Truesdale v. Brennan, 153 Mo. 600.] In this case the part of the purchase money for which this action is brought is not in the mortgage and therefore there is, of course, no merger, and we call attention to the proposition merely to show that the taking a mortgage does not necessarily destroy the vendor's lien for that part of the price not embraced therein and that such lien may be kept alive by an agreement that it shall.

Therefore, not being bound by an omission of an express reservation of the lien, in the mortgage itself, we are free to ascertain from the acts and conduct of the parties *aliunde* the mortgage, whether a lien was retained by plaintiff. In our opinion the weight of the oral testimony was with the plaintiff on that question. It was shown that both he and defendant understood that the vendor's lien was retained, and the reasons for such retention were stated by witnesses.

But, in addition to that, the note itself reads that "One year after date I promise to pay to the order of R. M. Bradbury, for unpaid purchase price of Opera House in Maryville, Mo., two thousand dollars, . . . . If the interest be not paid annually, or a transfer made affecting the title of the property for which this note is given within one year, then the whole of the note shall become due at the option of the legal holder of the note." It is thus placed beyond cavil that the parties did not intend to waive the lien, but on the contrary made express provision for its recognition.

The decree was manifestly for the right party and it is affirmed. All concur.