**Wilburn RADER, et al., Plaintiffs-Respondents,**

v.

**Morton H. DAWES, et al., Defendants-Appellants.**

**No. WD33809.**

Missouri Court of Appeals, Western District.

April 12, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1983.

Application to Transfer Denied June 30, 1983.

William B. Morgan, Elisabeth R. Sauer, Kansas City (John Edward Cash, Kansas City, of counsel), Campbell, Erickson, Cottingham, Morgan & Gibson, Kansas City, Mo., for defendants-appellants.

Vincent F. Igoe, Jr., John M. Crossett, Hale, Kincaid, Waters & Allen, P.C., Liberty, for plaintiffs-respondents.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

WASSERSTROM, Presiding Judge.

The issue here is the right to priority between two competing liens on real estate. Defendants contend theirs is prior in right because recorded first in time. Plaintiffs, on the other hand, contend that theirs is prior in right because based upon a vendor's lien. The trial court ruled for plaintiffs, and defendants appeal. Contrary to defendants' contentions, we hold: (1) plaintiffs did not waive their vendor's lien; and (2) defendant Dawes had actual and constructive knowledge of facts sufficient to put him on notice of plaintiffs' rights.

Plaintiffs, Mr. and Mrs. Rader and Mr. and Mrs. Murphy, owned 120 acres of land in Clay County, Missouri. They listed this property with Tipton for sale at $3,000 per acre provided that all of the acreage was sold simultaneously. In all actions relating to that listing and subsequent dealings, Wilburn Rader acted for and with the authority of all the other plaintiffs.

Tipton received an offer from Wollberg to purchase 80 acres at the stipulated price, to be acquired in the name of Wollberg's closely held corporation Keystone Development Company. To take up the balance of the acreage, Tipton arranged with Feldhausen to buy the remaining 40 acres in the name of their controlled corporation, Crow Creek Corporation. The deal between plaintiffs and Wollberg was evidenced by a form contract which provided in part that plaintiffs would take back a deed of trust to secure a loan for $180,000 of the purchase price, and that the plaintiffs' deed of trust would be subject to "a development loan." It was also understood that the note and deed of trust from Keystone would have to be co-signed by Mr. and Mrs. Wollberg. Wollberg requested that the transaction be closed by Sentry Title Company, and all the other parties acquiesced.

Rader then retained an attorney Driskill who prepared a warranty deed from plaintiffs to Keystone, a promissory note from Keystone to plaintiffs (co-signed by the Wollbergs), a deed of trust from Keystone (co-signed by the Wollbergs) and a more formal contract of sale. Driskill, accompanied by Rader, delivered those documents to Sentry on June 15, 1981. At that time, Ms. Mullikin, the person designated by Sentry to close the transaction, delivered to Driskill and Rader a Housing and Urban Development Settlement Statement which reflected that plaintiffs were to receive a first deed of trust; nothing on that statement indicated that there was to be any other mortgage or deed of trust involved. Neither Rader nor Driskill had received any information that Wollberg or Keystone had arranged for any other mortgage lien which was to be handled at that time.

After Driskill and Rader had completed their visit to Sentry, Wollberg came to see Mullikin and delivered a letter of instructions which advised Sentry as follows:

> "Enclosed please find the contract for sale and $60,000. If all of the items listed below cannot be accomplished, the money shall be returned to remitter at the close of business today.
>
> 1. Obtain valid warranty deed from Sellers.
>
> 2. File note and Deed of Trust to the Dawes as a First and provide them with a Mortgagees Policy
>
> 3. File note and Deed of Trust to Raders and Murphys as a Second.

4. Divide commission as instructed and send seperate [sic] checks to each realtor.

5. Provide us with Title Policy."

The $60,000 referred to in that letter of instructions represented part of a loan which Wollberg had arranged with defendant Morton H. Dawes. Wollberg already owed Dawes $35,000 from previous transactions between them. In order to raise the down payment of $60,000 due to plaintiffs, Wollberg agreed to give Dawes a $100,000 note secured by a deed of trust on the land which he was purchasing from plaintiffs. The consideration for the $100,000 note was the $60,000 down payment due to plaintiffs, the $35,000 past due accumulated indebtedness, and $5,000 which Dawes considered to be "a discount."

When Mullikin received the letter of instructions mentioned, she was puzzled as to how to proceed and consulted with Sentry's attorney. The Sentry attorney advised Mullikin to insert upon the deed of trust which had been delivered by Driskill the following additional statement: "This Deed of Trust is a second lien to Morton H. Dawes and Catherine M. Dawes, husband and wife, and satisfies the contract provision that requires seller to subordinate their deed of trust for a development loan." No notice was given by anyone to Driskill or Rader that such an addition was being made, and that alteration of the instrument was wholly without any authorization from either of them.

The following day Sentry recorded the pertinent instruments as follows: The warranty deed was recorded first at 9:38.1, the deed of trust in favor of Dawes at 9:40, and the deed of trust to plaintiffs at 9:43.2.

Wollberg was apparently unable to find the investors necessary to finance his proposed housing development; in any event, he defaulted on the very first payment due from him to Dawes. Dawes then proceeded with notice and publication of foreclosure. That triggered the present lawsuit by plaintiffs to quiet title, for a declaration of the rights of the parties, and for an injunction to stop the foreclosure, as to all of which plaintiffs prevailed in the trial court.

## I.

### *Waiver*

The Missouri courts follow the rule that a vendor of real estate is entitled to an equitable lien on land for any balance of the purchase price remaining unpaid to him at the time of the conveyance. Even though the vendor knows of a down payment mortgage and even though the latter is recorded first, the vendor's lien is accorded priority. *Rogers v. Tucker,* 94 Mo. 346, 7 S.W. 414 (1888); *Truesdale v. Brennan,* 153 Mo. 600, 55 S.W. 147 (1900); *Turk v. Funk,* 68 Mo. 18 (1878). Although this rule had been subjected to some scholarly criticism and is not followed in some states, defendants here acknowledge that this rule is an entrenched part of Missouri law.

Defendants argue, however, that the plaintiffs in this case have waived their vendor's lien. They assigned three separate bases for this conclusion, each of which will be separately discussed. All of these subarguments must be evaluated in light of the rule that the burden of proof is on the defendants who assert the waiver. *Causer v. Wilmoth,* 142 S.W.2d 777 (Mo.App.1940); *Tate v. Citizens' Sav. Bank,* 223 Mo.App. 957, 21 S.W.2d 222 (1929).

### A.

As their first ground for asserting waiver, defendants say that plaintiffs took back a deed of trust with an agreement that their deed of trust might be subordinated. The vendor's acceptance of a deed of trust is not in and of itself strictly speaking a waiver of the vendor's lien. It is waived only in the sense that it is not thereafter available as a basis for relief independent of the mortgage. The vendor's lien becomes merged in the mortgage, which is the higher security, but the vendor's lien is not lost. *Rogers v. Tucker, supra.* It is for that reason that in a contest between a vendor's lien and a lien arising from a down payment mortgage, the vendor's lien prevails. *Bradbury v.*

*Donnell,* 136 Mo.App. 676, 119 S.W. 21 (1909). *See also Barnhart v. Little,* 185 S.W. 174 (Mo.1916).

■ Nor is anything added to the validity of defendants' argument simply because plaintiffs agreed that under certain circumstances they would subordinate their deed of trust. The subordination agreement in the final contract of sale dated June 15, 1981, provided as follows: "7. SELLER agrees to subordinate their promissory note and deed of trust for the purposes of a principal development loan for constructing improvements compatible with single-family dwelling construction and the purposes of this contract." The purposes of the contract were thereafter explained in paragraph 8 of the contract as follows: "It is the intention of PURCHASER to develop the property for three (3) acre lots and single-family dwelling purposes. It is agreed by and between the parties that this is the only other use for which the property may be used. . . ."

The subordination clause contained in the above paragraph 7 is unambiguous, as the trial court held. Plaintiffs agreed that if and when Wollberg secured a loan which would enable him to develop the property for single family residences, plaintiffs would subordinate their lien to that of such a development loan. The loan made by Dawes was most clearly not of that character. Of the $100,000 loaned by Dawes, $35,000 was represented by a past indebtedness on the part of Wollberg that had nothing whatever to do with the property sold to Wollberg by plaintiffs. $60,000 of that loan was intended and was used as the down payment by Wollberg to plaintiffs. The remaining $5,000 was intended simply as a bonus to Dawes for making the loan. It is plain without doubt that no part of the Dawes' loan was intended to be used to develop this property so as to qualify within the meaning of the subordination clause, paragraph 7.

Defendant Dawes attempts to have the subordination clause interpreted in light of what happened subsequently with respect to the Tipton/Feldhausen transaction. Such attempt at interpretation is inappropriate, because as already said the subordination clause contained in paragraph 7 is unambiguous and is therefore not subject to construction. Nevertheless, even if reference be made to the Tipton/Feldhausen transaction, Dawes receives no assistance.

The Tipton/Feldhausen transaction was closed in September, approximately three months after the closing between plaintiffs and Wollberg. At the time of the September closing, Tipton presented to Sentry a $25,000 check from Citizens Bank as the down payment and a note and deed of trust running to Citizens Bank in the amount of $50,000. Tipton had a subordination agreement in his contract similar to paragraph 7 in the Wollberg contract, and Citizens Bank insisted that its deed of trust must be the first and prior lien as against the deed of trust to be given plaintiffs on the 40 acre tract. After some discussion, Rader agreed that the Citizens Bank lien came within the subordination agreement and agreed that the Bank lien was to be given priority. The circumstances of the loan made by Citizens Bank to Tipton/Feldhausen was completely different from those involved in the transaction giving rise to the Dawes' note and deed of trust. First of all, the Citizens Bank loan was for twice the amount of the down payment, thus allowing funds for development of the 40 acre tract. Moreover, Tipton testified that he had already advanced some development money which was entitled to be credited against the $25,000 furnished by Citizens Bank for the down payment. The circumstances surrounding the Citizens Bank note and deed of trust differ radically from those which gave rise to the Dawes' note and deed of trust. No implication in favor of Dawes may be drawn by reason of Rader's agreement to the subordination of the Citizens Bank lien on the 40 acres.

B.

Dawes' next ground for urging a waiver is an alleged estoppel based on alleged negligence by Rader and Driskill. Dawes claims that Driskill should have instructed

Sentry not to close except on the basis of plaintiffs receiving a first lien. This argument leaves completely out of account the fact that Sentry had delivered to Driskill the HUD form showing that plaintiffs would receive a first deed of trust. As a matter of fact, that form did not reflect that any other mortgage or deed of trust was involved at that time at all.

The trial court concluded that plaintiffs and their attorney were not guilty of any negligence as charged by Dawes. That conclusion is supported by substantial evidence and is not against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

C.

■ Defendant Dawes claims finally that waiver occurred because plaintiffs took independent collateral for the Keystone $180,000 note, consisting of the co-signatures by Mr. and Mrs. Wollberg. The taking of independent collateral security may under certain circumstances evidence an intention by a vendor to waive his vendor's lien. The fact of such additional collateral security is, however, not conclusive and presents simply a factual question of intention. *Pratt v. Eaton,* 65 Mo. 157 (1877); *Lavender v. Abbott,* 30 Ark. 172 (1875).

All of the cases cited by Dawes where the taking of collateral security was held to constitute a waiver of the vendor's lien are factually distinguishable. So in *Edmonson v. Joy,* 211 S.W. 137 (Mo.App.1919), the vendor wanted the balance due him secured by a mortgage, but the vendee refused to so agree and said that if such were a condition then the vendee would not make the trade. Thereupon the vendor told the vendee and her husband: "That is all right. I will take your notes. That is all I want. I know you will pay me. I don't want any security but your notes." Under those facts, it was held that the vendor's taking of a note from the vendee's husband evidenced an intention to waive the vendor's lien.

Very special circumstances were also involved in *Sullivan v. Ferguson,* 40 Mo. 79 (1867), also relied upon by Dawes. In that case, which involved very complicated facts, the vendor contemplated that the vendee would make an absolute sale of the property to other parties with a view toward satisfying outstanding interests and claims by other individuals. The vendor took a guarantee of payment from one other than the vendee. It was held that under the particular circumstances and objects that the parties had in view, the vendor had waived her vendor's lien.

*Christy v. McKee,* 94 Mo. 241, 6 S.W. 656 (1888), cited by defendant, is still further afield. That was a case of *express* waiver by the vendor.

Nothing in the present case begins to approach the special facts in the above cases cited by Dawes. On the other hand there is a factor here which argues strongly against any implication of waiver by reason of the co-signatures. In the note signed by Keystone and co-signed by the Wollbergs, the following appears: "Provisions of the June 15th, 1981 contract between the parties are incorporated into this note." The June 15, 1981, contract so referred to did of course call for a lien on the property to plaintiffs for the unpaid $180,000 represented by the promissory note. It has been held that such a reference in the vendee's note co-signed by other parties evidences an intention that the taking of the additional security by way of co-signatures was not intended to waive the vendor's lien. So, in *Hood v. Hammond,* 128 Ala. 569, 30 So. 540 (1901) it was held:

> " '[W]hoever resists the enforcement of the [vendor's] lien, assumes the burden of showing that it has been intentionally displaced or waived by the consent of the parties.' If under all the evidence, that question remains in doubt, the lien attaches. *Wilkinson v. May,* 69 Ala. 33; Jones, Liens, Sec. 1064.
>
> "The fact that the notes recite that their consideration was the sale of land, and that the deed, the same day executed, describes the notes so taken as a consideration for the sale of the lands conveyed, evidence an intention of the parties, that a vendor's lien should be

retained, even in cases where collateral security had at the time been given."

To like effect: *Spears v. Taylor,* 149 Ala. 180, 42 So. 1016 (1907); *Lindsey v. Thornton,* 234 Ala. 109, 173 So. 500 (1937); *Stroud v. Pace & Allison,* 35 Ark. 100 (1879); 77 Am.Jur.2d Vendor and Purchaser Section 440 (1975).

II.

*Knowledge by Dawes*

Dawes argues it would be inequitable to give plaintiffs priority against him because he was without knowledge or reason to know that plaintiffs expected a prior lien. In so arguing, Dawes urges a correct rule of law. If a third party lends funds to a vendee and takes and records a deed of trust as security, without knowledge that the vendor has an unrecorded vendor's lien, the third party lender will be protected and will be accorded priority. *Woodard v. Householder,* 315 Mo. 1155, 289 S.W. 571 (1926); *Trigg v. Vermillion,* 113 Mo. 230, 20 S.W. 1047 (1892).

The difficulty with the argument, however, is that the facts of this case fail to bring Dawes within the above rule. Dawes knew that plaintiffs were vendors who would have an unpaid balance of the purchase price due from Keystone, for which they would be taking back a note secured by a deed of trust. Although Wollberg said something to Dawes about plaintiffs being willing to take "a second mortgage," it was Dawes' duty to investigate whether that was in fact true. *Turk v. Funk, supra.* Dawes could easily have discovered the truth of the matter by checking the real estate contract between plaintiffs and Keystone which was on deposit with Sentry, but Dawes admitted in his testimony that he made no attempt to do so.

Moreover, Dawes testified that he did not rely on Wollberg's statement referred to above, but rather that he relied on Sentry. Inasmuch as Sentry never made any representation to Dawes as to plaintiffs' subordination agreement or the nature thereof, Dawes necessarily meant by his testimony that he relied on the title insurance policy which he insisted that Sentry be prepared to supply to him before releasing his $60,000. That policy was issued, and Dawes still has a full right of recourse against it; so that his reliance in this case on Sentry need not be frustrated.

III.

*Request for Transfer*

Defendants request that if we rule against them on all of the arguments already considered, then this court should transfer the case to the Missouri Supreme Court for the purpose of reexamining the existing law respecting vendor's liens. We decline to exercise the discretionary power granted to us in this respect under Rule 83.02. If the Supreme Court should desire to review the law on this subject, it has full power to order transfer itself under Rule 83.03.

Affirmed.

All concur.