# The St. Joseph Manufacturing Company

*v.*

# Augustus M. Daggett.

1. Power of sale—*of the notice of sale.* Where the requirement of the power of sale in a mortgage is, that ten days' notice of the sale shall be given, it will be sufficient, if the notice is published in a daily newspaper, and the first insertion thereof is not less than ten days before the sale. It is not necessary that ten days shall intervene between the last insertion and the day of sale.

2. Same—*character of paper in which notice is published.* Where the power of sale in a mortgage authorizes a sale in a certain event, upon ten days' notice in a newspaper of a certain city, no proof will be required of the notoriety or the extent of the circulation of the paper in which such notice is published, to sustain the sale.

3. Mortgage—*when sale must first be made of part not alienated.* If a party is equitably entitled to have a part of mortgaged premises, not alienated by the mortgagor, first sold under a power in the mortgage, he must apply to a court of chancery before the sale, and if he does not, the sale can not be set aside as against a *bona fide* purchaser.

4. Deputy clerk—*not estopped by acts of his principal.* A deputy circuit clerk has no independent authority as such, and is under no legal obligation to discharge any duty except under the direction of his principal, and therefore is not estopped from questioning the title of a party under execution issued more than a year after the last day of the term at which judgment was rendered, when such deputy neglected to issue the execution in proper time, under the directions of his principal, without notice of his bad faith.

5. Sale under power—*whether induced by fraud.* The fact, that one joint maker of a note secured by mortgage, upon the refusal of his co-maker to pay his part of an installment due, refuses to pay his part, and

suggests a sale under the power, is not evidence of his fraudulently procuring a foreclosure of the mortgage.

6. LIS PENDENS—*judgment is not as to title ·claimed under it.* A judgment for a sum of money, which may be satisfied by a sale of real estate, if not otherwise satisfied, can not be regarded as *lis pendens* in regard to the title to the real estate of the defendant in the judgment. It is either a lien, or the real estate is unaffected by it.

7. ESTOPPEL—*by acts and representations.* A party can not rely upon an estoppel from acts and representations upon which he was not induced to act otherwise than he would, nor can he upon information given which is no more than the public records disclose.

8. JUDGMENT—*lien, when lost.* If an execution is not issued upon a judgment within one year after the last day of the term at which it is rendered, the lien of the judgment upon real estate will be lost,' and a subsequent mortgagee of the land, in good faith, or a *bona fide* purchaser at a sale under the mortgage, will hold the land, unaffected by the judgment.

9. PURCHASER—*with notice of equities, protected by purchase from bona fide holder.* A purchaser of land with notice of outstanding equities may protect himself by purchasing the title of another who was a *bona fide* purchaser, and this will not make him hold the property as a trustee.

10. PARTIES IN CHANCERY—*bill to remove cloud.* Where land is sold under execution, none having been issued within a year, so that the lien of the judgment is lost, and the defendant executes a deed of trust upon the land, which is foreclosed, and the title passes to a *bona fide* purchaser, the defendant in the execution and the person secured by the trust deed, are not indispensable parties to a bill, by the purchaser under the deed of trust, to set aside the sale on execution as a cloud on his title.

APPEAL from the Circuit Court of Ford county; the Hon. J. W. COCHRAN, Judge, presiding.

Mr. CALVIN H. FREW, for the appellant.

Mr. E. C. GRAY, and Mr. Z. S. SWAN, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee filed his bill in chancery, in the court below, against appellant, its attorney, and the sheriff of Ford county, praying that the execution of a sheriff's deed to certain lands that had been sold on execution be enjoined, and that the cloud cast upon the title of appellee by such sale be removed. Appellant answered, and also filed its cross-bill praying that

it be allowed to redeem from a certain deed of trust, under which appellee's title is derived. Answer was filed to the cross-bill, as also were replications to the respective answers.

The court, on hearing, denied the prayer of the cross-bill, and granted the prayer of appellee's bill.

It appears that on the 6th of June, 1871, appellant recovered a judgment, in the circuit court of Ford county, against *Henry* R. Daggett and Levi A. Dodd, for $457.16, but no execution was issued thereon within one year, nor until the 24th of January, 1873, when execution issued and was levied on the undivided half of the lands in controversy, as the property of Levi A. Dodd, and the same was sold by the sheriff to appellant on the 26th of the month. Meanwhile, appellee (*Augustus M*. Daggett) and said Levi A. Dodd, being owners, as tenants in common, each of an undivided one-half of these and other lands, after the before-mentioned judgment was rendered and before any execution thereon was issued, that is to say, on the 15th of August, 1871, conveyed them in trust, with power of sale, to E. D. Hosmer, to secure an indebtedness of several thousand dollars to I. Lester Easton; and the conveyance was, shortly thereafter, recorded in the proper office. On the 20th of January, 1873, Dodd conveyed his interest in the lands to Douglas Eastbrook; and on the 20th of January, 1874, appellee quitclaimed his interest therein to Dodd. Hosmer, as trustee, sold the lands at public sale and conveyed them to the purchaser, Anson B. Jenks, on the 23d of June, 1874, for $2260. David A. Patton purchased the lands of Jenks, for appellee, and Jenks conveyed them to Patton on the 14th of July, 1874, and Patton conveyed to appellee September 16, 1874.

Before proceeding to the principal question discussed in the arguments of counsel, it is necessary to notice two objections which are suggested against the validity of the trustee's sale: First, that notice thereof was not given the requisite length of time before the sale; and second, that after appellee quitclaimed to Dodd, he still had forty acres, not included in that

conveyance, but which was embraced in the land described in the deed of trust; and that this should have been sold first.

The power in the deed of trust has this language: " It shall be lawful for the said party of the second part, his heirs, assigns, or successors in trust, to sell and dispose of said premises, or any part thereof, and all equity of redemption of the said party of the first part, his heirs and assigns therein, either in mass or in separate parcels, as said second party, his heirs, assigns or successors, may prefer, at public auction, at the door of the sheriff's office, in the city of Chicago, in the county of Cook, in the State of Illinois, for the highest and best price the same will bring in cash, ten days notice of such sale having been first given in one of the newspapers published in said city of Chicago."

The notice was published in a daily paper, called "The Courier," the first publication being on the 11th of June, and thereafter the notice was published daily until and including the 23d of June, the day of sale. It is objected, that the newspaper-was obscure and of limited circulation, and that the last publication should have been ten days before the sale. There is no proof in regard to the circulation or character of the paper. It appears to have been a newspaper, and neither the power nor the law requires proof of any specific notoriety or extent of circulation, to make a valid medium for notice by publication. The requirement of the power is not that the last notice shall be published ten days before sale, but simply that ten days' notice shall be given of the sale. The notice was clearly sufficient, and such was the ruling of this court in the cases, in all respects analogous, of *Weld et al.* v. *Rees*, 48 Ill. 428, and *Cushman* v. *Stone et al.* 69 id. 520.

In respect to the other objection, it will have been observed that it was entirely discretionary with the trustee, by the terms of the power, whether the trustee should sell in mass or in separate parcels. Even if, upon equitable grounds, appellant would have been entitled to have the forty acre tract, not quitclaimed to Dodd, sold first, it should have made its application to a court of chancery, for that purpose, before the sale.

We are aware of no authority which authorizes a sale, otherwise free of legal objection, to be set aside and the title of a *bona fide* purchaser to be divested, for a cause of this kind. Apart from this, however, this is neither alleged in appellant's answer as a ground of defense, nor in its cross-bill as a ground for the relief thereby prayed; and we are, therefore, for this reason, if for none other, precluded from attaching any importance to it.

The principal ground relied upon for a reversal of the decree is that, by the fraudulent conduct of appellee, in connection with that of Dodd, execution was prevented from being issued on appellant's judgment until after the expiration of one year from the last day of the term at which the judgment was rendered; that the sale of the trustee was induced by appellee to be made, earlier than it would otherwise have been; and that Jenks purchased for appellee, and not for himself; and it is, therefore, insisted, appellee is equitably estopped from claiming that the deed of trust was a prior lien to appellant's judgment, and the title derived thereunder paramount to the title with which it should be invested by the sheriff's deed.

We have carefully examined, and re-examined, all the evidence preserved in the record, and are unable to yield our concurrence in either of these assumptions in regard to the facts.

The evidence shows that, during the period in question, Dodd was circuit clerk and appellee was his deputy. It also shows that *præcipe* for an execution was filed in the office of the circuit clerk, within less than a year after the judgment was rendered; but it likewise shows that Dodd ordered appellee not to issue the execution, giving, as the reason for such order, that he had arranged with appellant's attorney to settle the judgment. There is no evidence that appellee knew that Dodd had not made such arrangement, but there is proof to the contrary. Appellant's attorney admits that Dodd made a proposition to him, in that respect, which he submitted to appellant and with which it was satisfied; but says that Dodd did not comply with his agreement, and that he did not in-

tend, by entertaining this proposition, that the issuing of the execution should be delayed. If Dodd were in the place of appellee, it is probable, he would be estopped from availing of the failure to issue the execution within the time requisite to preserve the lien of the judgment, but upon this we express no opinion. Appellee had no independent authority as deputy, and was under legal obligation to discharge no duties except under the direction of Dodd as his principal. He was responsible to him, and to him alone, for the performance of his duties. *McNutt* v. *Livingston*, 7 Smedes and Marshall, 641; *Snedicor* v. *Davis*, 17 Ala. (N. S.) 472. When, therefore, Dodd ordered him not to issue the execution, he was justified in obeying the order; and since it does not appear that there was any circumstance from which he should have doubted the truth of the statement made by Dodd as the reason for the order, and it is not shown that he was subsequently, and within the year, informed of its untruth, or of any fact tending to show that Dodd was acting in bad faith, we are not warranted in indulging in presumptions to his prejudice, because of the failure to issue the execution.

The evidence in regard to his inducing the sale is, merely, that he refused to make payment of the installment then due, and informed the trustee that he might sell, or would have to sell. There was nothing unreasonable in this, or of which any one could have just cause to complain. The debt was a joint one of him and Dodd. Dodd failing to pay his part, and being, as we are authorized to infer from the evidence before us and the character of this controversy, of, at least, doubtful solvency,—the sale of the property by the trustee would seem to have presented the only certain mode by which he could be relieved from paying and bearing the loss of Dodd's part of the debt. The power authorized the sale as it was made, and, in default of payment of the installment due, the trustee's duty was to do what he did, and appellee's suggestion could not in anywise affect it.

The evidence affirmatively shows, that Jenks was a purchaser at the sale of the trustee, for value, and there is nothing

36—84TH ILL.

to show that he acted in bad faith. Patton was there, also, as the agent of appellee, but he did not employ Jenks to purchase for him or for appellee. His authority, at that time, seems to have been limited to making some arrangement with the trustee by which Easton was to take a part of the property in satisfaction of his debt and release the residue. Being unsuccessful in this, the sale was made, and Patton returned to Ford county. Some days afterwards, he again visited Chicago, as the agent of appellee; hunted up Jenks, with whom it would seem he had not been previously acquainted, and purchased the property of him for appellee.

We are not to be understood as saying, had Patton purchased at the trustee's sale for appellee, it would, under the circumstances, have been objectionable, but simply as asserting that, from our understanding of the record, he did not do so.

We are unable to discover any application of the doctrine of *lis pendens* and of estoppel, upon which we are favored with references to authorities by counsel for appellant, to the facts here proved. There was no suit pending in behalf of appellant, in regard to the *title* to this property when appellee's purchase was made, or at any time prior thereto. A judgment for a sum of money which may have to be satisfied by a sale of real estate, if not otherwise satisfied, has never, so far as we are advised, been held to be *lis pendens* in regard to the title of the real estate of the defendant in the judgment. It either amounts to a *lien*, which may be enforced by a sale, subject to redemption, or the real estate is unaffected by it.

So far as relates to the claim of equitable estoppel, it is necessary only to say, we have not been able to find evidence which satisfactorily shows that appellee, by any conduct of his, authorized appellant so to act, and that appellant, on the faith of such conduct, has so acted, that it would suffer injury as the consequence of such act, were appellee now allowed to assert his claim to the property. Appellant was not authorized to rely upon appellee, a mere deputy, to issue the execution, in the absence of any understanding with him that he

should issue it, and without regard to the wishes or order of his principal; and there is no evidence that, in fact, it did rely upon him to issue it. Moreover, when it purchased at the sheriff's sale, it knew that the execution had been issued after the judgment had ceased to be a lien, and the records gave notice of the existing lien of the deed of trust. The fact that appellee, before the execution was levied, informed appellant's attorney of Dodd's interest in the property, can, in no sense, be held to have been a representation by appellee that there was no incumbrance on the property; that the deed of trust should be released, or that he would not become the owner of the land by virtue of a purchase at a sale under it. The information was no more than the records disclosed, and it is not to be supposed that it induced appellant to do anything which it would not have done, if, instead of receiving the information from appellee, it had received it from the records.

Nor are we aware of any principle upon which it can be held appellee holds the legal title as constructive trustee for appellant. It is not shown he owed any duty to appellant, as respects the property, which he failed to discharge, or that he obtained title from another, knowing that other held the property, either actually or constructively, as trustee for appellant. The undivided half interest which he formerly owned in the property, it is not claimed was in anywise affected by the judgment. He was no party to the judgment, and his property was not bound for its payment. His present title is based solely on his purchase from Jenks. As between appellant and Easton, and as between appellant and Jenks, there is no pretense for asserting any claim of appellant, under its judgment, is paramount. The lien of the judgment was not preserved by the issuing of the execution, and for this they were in no sense responsible. Easton was mortgagee, in good faith, and Jenks was a purchaser in good faith, for value, at the trustee's sale. No case has been referred to, and we think none can be, which sanctions a ruling that, under the evidence, appellant's judgment, notwithstanding its lien was not preserved, was

paramount to the deed of trust and to the title derived by Jenks at the trustee's sale; and there is no hypothesis which would justify us in holding that Jenks, under the circumstances, took only the interest of a mortgagee. Being a purchaser in good faith, for value, and taking the title unaffected by any prior lien in favor of appellant, as against appellant he was both the legal and equitable owner of the property. This being so, it would follow, even if it had been shown appellee had notice of some equity which would have charged him as trustee, had he obtained title directly from the trustee in the deed of trust, he would be protected by the good faith and want of notice in Jenks when he obtained his title. The doctrine is, "a purchaser with notice may protect himself by purchasing the title of another *bona fide* purchaser for a valuable consideration without notice; for, otherwise, such *bona fide* purchaser would not enjoy the full benefit of his own unexceptionable title." Story's Equity Jurisprudence, § 409; Perry on Trusts, §§ 222, 830.

We do not think Dodd and Eastbrook were indispensable parties to appellee's bill. They had no possible interest in the matters in controversy between appellee and appellant, and their omission can not prejudice appellant.

The decree is affirmed.

*Decree affirmed.*