### ALBIGENCE H. BROWN AND CHARLES F. EMERY
### v.
### SYLVANUS SHURTLEFF.

*Trust Deed—Partition—Sale of Portion of Premises—Bill for Contribution.*

Upon a bill filed by the owner of a portion of a tract of land subject to a trust deed, securing a note, a balance on which he had been required to pay, against the owners of other portions for contribution, it is *held:* That the

lien of the trust deed was not affected by certain partition proceedings, wherein a certain part of the premises was set apart on account of the debt secured by the trust deed; that the acceptance by the holder of the note of the proceeds of the part so set apart did not extinguish the trust deed; that the sale by the trustee of the complainant's portion of the premises was legal; and that he thereby became entitled to contribution from certain of the defendants.

[Opinion filed November 20, 1886.]

APPEAL from the Circuit Court of De Witt County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. OTTEN & VAIL, for appellants.

Messrs. MOORE & WARNER, for appellee.

PLEASANTS, P. J.    Appellee filed the original bill herein as purchaser of a portion of a tract of land subject to incumbrance, which he paid, against the owners of other portions, for contribution.    The following is an outline of the case made by it.

In March, 1871, John Adkisson died intestate, seized of 234 acres of land in DeWitt County, and leaving a widow, Corilla, and three sons, Thomas B., Horace and Frank, his only heirs, of whom the last named was a minor.

In 1874, to avoid a forced sale of land to pay debts of the estate, the widow and adult sons borrowed of appellant Brown, through Emery, $2,000, for which they gave their note at five years, with interest at ten per cent. per annum, payable semi-annually, and to secure it executed a deed to Emery, as trustee, of their interest in 139 acres described, including the home farm.

To the August term, 1875, of the Circuit Court they filed a petition for dower and partition, suggesting that ten acres of the tract described in the trust deed, if sold in lots to suit purchasers, would probably bring enough to pay off that debt, and asking that such amount be so sold for that purpose, and the residue of all partitioned, or that all be partitioned and the incumbrance apportioned among the co-tenants.    The mi-

nor son and Emery, the trustee, were made defendants, but the latter did not appear, and Brown was not a party named. A decree was made according to the prayer of the petition. The land embraced in the trust deed was divided into five parcels, of which lot one, of ten acres, was ordered to be sold to pay the Brown debt; lot two was set off to Horace; lot three to Frank; lot four to the widow, as part of her dower, and lot five to Thomas B. The part not covered by the trust deed was also partitioned to the satisfaction of the parties.

Horace paid one-third of the debt and had his lot released. The master, some years afterward, sold lot one, and paid over the proceeds, amounting to $1,076.40 after deducting the costs and expenses, to the trustee. No further payment being made, the trustee, by direction of Brown, who still held the note, advertised the premises, excepting said lots one and two, to be sold on January 20, 1882.

Meanwhile, in January, 1876, Thomas had conveyed his lot five to Andrew Hutchin, whose deed recited the liability of the land so conveyed for any balance of the mortgage debt that might remain after the application of the proceeds of lot one, but expressly limited the grantor's personal liability to the grantee on that account to $200. On February 26, 1876, Hutchin conveyed twenty-one acres of said lot five to appellee, and another portion to P. H. Mills, and on the 6th of March following, the residue to Jacob Vogle, who, on March 21, 1878, conveyed to George W. Ely, and he, on the same day, to Samuel Dunmire.

On the day advertised for the trustee's sale, as above mentioned, the widow paid him $450, which was understood to be or to make up her full share of the debt, and the trustee sold the portion of lot five which had been conveyed to appellee for the balance, $685.66. It was bid off by John Warner, for the benefit of appellee, who reimbursed him the amount so paid. The bill made defendants, the widow and sons, and Hutchin, Mills, Vogel, Ely, Dunmire and Warner, and prayed that the owners of lot three and the other portions of lot five (conveyed by Hutchins to Mills and Vogle) contribute and pay to complainant their due proportions of the amount he had so

paid, and for general relief; and after demurrer thereto sustained, an amendment was filed to the December term, 1882, making Brown and Emery defendants also, and praying that Emery be required to answer as to payments, fees and expenses made on said loan, and if he or Brown, or both, had received any money thereon to which they were not entitled, they be decreed to pay it back to the proper parties; that the deed from the trustee to Warner be set aside, and for general relief.

All the defendants answered, some severally and others jointly and severally, and by cross-bill of Vogle, Mills and Dunmire, two grantees of the remainder in fee of a portion set off to the widow for her dower, were brought in and answered it. Replications were filed and proofs taken. It is unnecessary, however, to notice these further pleadings or the proofs, since they present nothing that modifies the bearing of the facts set forth in the bill, which are clearly established and present all the equities in the case.

On final hearing the court found that Emery, being a party to the partition proceedings, was bound by the decree therein; that Brown also, by accepting the proceeds of the master's sale of lot one under it, ratified and was bound by it; that said sale and payment over of the proceeds to the trustee released or extinguished the trust deed; that complainant was not entitled to contribution from anybody because his land was not subject, at the time it was sold, to the lien of the trust deed; that the sale of it by the trustee was unauthorized and illegal and the payment by Warner to him, for the benefit of complainant, of the $685.66, was compulsory, and therefore ordered that the trustee, within sixty days, repay it with interest to date of decree, making $850.96 and interest thereon from that date, until paid, and that his deed to Warner be set aside. The bill was dismissed as to all defendants except appellants, and the costs were adjudged against Emery.

We must think these findings and orders were all wrong. As we understand it, the partition decree did not purport, nor does it otherwise appear that it was intended to affect any right of Brown as then existing under the trust deed.

Nothing of the kind was asked of the court. The petition was to set apart a small portion of what was embraced in the deed, not in absolute substitution for the whole as security to the creditor, but as a means of raising, if it would raise, enough to release the residue. Whether it would or not was then uncertain. The arrangement was proposed as in the interest of the debtors and of no concern to the creditor, and the order simply authorized the experiment.

But if it had been asked, and right in itself, the court was without power to do it. In the deed, which was on record, Brown was named as having all the beneficial interest, and Emery only the naked legal title, as such was the fact; yet Brown was not made a party to the proceeding, nor represented therein by Emery, who was. Therefore the decree could not, of its own force, bind him. McGraw v. Bayard, 96 Ill. 146 ; Land Co. v. Peck, 112 Ill. 408, 435.

And if the court had possessed the power, it would have been error so to use it. The debt was just and the security freely given. There was no pretense that anything had since occurred to change the equities of the parties further than it had paid the debt. Upon what notion of law or right, then, could the court modify the contract or make a new one, or release any part of the security? The parties most interested did not so understand it, as is shown by the original bill, by the deed to Hutchin and by the widow's payment.

Then, since the decree itself did not contemplate the extinguishment of the trust deed until the debt should be fully paid, Brown's acceptance of the proceeds of the master's sale in pursuance of that decree could have no such effect. His note was then due. The money so received paid it in part. It was raised by sale of part of his security, and it was immaterial to him whether such sale was made by his debtors or by the master or by the trustee. ·

It follows that the sale by the trustee of appellee's parcel to make the balance remaining due was not illegal. It was provided in the trust deed that in default of payment he might at once proceed to sell the property thereby conveyed, "entire, without subdivision, or in parcels and subdivisions," in his

discretion, and the fact that this parcel was sold rather than some others, by an understanding with their owners and in fear of an injunction, if he attempted to sell them, would furnish to appellee no ground of complaint or relief as against the trustee or Brown. St. Joseph Mfg. Co. v. Daggett, 84 Ill. 556, 559.

But the sale of his land did entitle him to contribution from others in like case, as to liability for the debt. It had been contracted for the common and equal benefit of those who inherited in common the land pledged for its payment. From the record, as it stands, it appears that Frank is chargeable with one-third. Pitsworth v. Stout, 49 Ill. 78; Freeman on Co-Ten. & Parc., Sec. 512. For the same reason Thomas B. was chargeable for the same proportion, but he has discharged it upon Hutchin, except as to $200. This sum he should pay, and the residue of his original third be charged to Hutchin, if he is solvent, and if not, to his grantees, in the inverse order of alienation from him.

The decree will be reversed and the cause remanded, with directions to ascertain the amounts due by way of contribution from the other parties liable, and decree that they pay the same to complainant.

*Reversed and remanded, with directions.*