A. F. WOODARD, Appellant, v. HARRY HOUSEHOLDER and MABEL E. HOUSEHOLDER, A. A. CARPENTER, EDITH M. YOUNT, HELEN YOUNT STUART and HOMER STUART, VERDIE YOUNT LUTE and GEORGE LUTE, IMOGENE YOUNT, and A. B. MADGERFRAU, Admin-istrator of Estate of I. I. YOUNT.

Division One, November 15, 1926.

1. **DEEDS OF TRUST: Priority.** A deed of trust reciting that it is subject to another of the same date, and recorded after such other, does not have priority over such other.

2. ——: **Misdescription: Friendly Suit to Reform and Foreclose: Right of Redemption.** The mortgagor in a second deed of trust still has a right of redemption upon the foreclosure of a third deed of trust. The warranty deed described land as in Section 11 whereas it was in Section 10, and a first deed of trust to the grantors and a second deed of trust to plaintiff by the grantee contained the same misdescription, and thereafter said grantee made a third deed of trust which correctly described the land; and there-after the mortgagee in the third deed of trust brought suit against said grantors and the grantee, who was the mortgagor in the third deed of trust, to reform the warranty deed and the first deed of trust, and to foreclose the third deed of trust, and a decree was entered according to the prayer. **Held,** that the suit, though a friendly one, and though the mortgagee in the second deed of trust was not made a party, did him no wrong. He would have been a proper party, but he was not a necessary party, and his right to redeem still remained after the decree, and a foreclosure of the third deed of trust in pursuance to the decree.

3. **DEEDS OF TRUST: Purchase Money: Priority.** Subject to priority of record, the lien of a purchase-money mortgage takes precedence over all other liens or interests which may attach to land, either contemporaneously with the passing of title to the vendee, or subsequently. Where Householder, the owner of land, entered into a written contract to sell to Duncan at an agreed price, and Duncan agreed in writing to sell to Woodard at an advanced price, and Woodard agreed in writing to sell to Yount at a still further advanced price, and Householder, by agreement of all parties, conveyed directly to Yount, and the purchase money was apportioned among all the owners according to their respective contract rights, among which was to be a first deed of trust to Householder for the deferred payments, and notes secured by a second deed of trust to Woodard for his profit, Householder was not the sole vendor, but Woodard's deed of trust falls within the designation of a purchase-money mortgage, and as between Householder and Woodard there was no priority; but as Yount thereafter made a third deed of trust to a bank, which was recorded before Yount's deed of trust to Woodard was recorded, Woodard's deed of trust was postponed to the third deed of trust to the bank.

4. ———: **To Secure an Existing Debt: Consideration: Extension.** An extension of time given for the payment of a pre-existing debt to the mortgagee constitutes a valid consideration for a deed of trust given to secure the payment of the debt.

5. ———: **Knowledge of Junior Lien: Other Security.** The mortgagor, who knows at the time he gives a deed of trust to a bank that there are two outstanding purchase-money mortgages on the land, knows that it is a third mortgage, and such is the character of the security he intends the bank to exhaust before making application to the debt of the proceeds of an insurance policy which names his wife as beneficiary and which is pledged as further security to the bank.

6. ———: **Collateral Security: Insurance Policy: Application: Wife: Priority of Lien.** Where a mortgagor and his wife execute a third mortgage to a bank, knowing it is subject to two prior contemporaneous purchase-money mortgages, one of which recites it is subject to the other, and as further security they pledge to the bank a life insurance policy which names her as beneficiary, and the mortgagor dies and the bank collects the insurance money, her equity is not superior to that of the mortgagee in the second deed of trust, but so far as she is concerned the lien of the second deed of trust takes precedence over that of the bank, and though she is merely a surety of her husband on the note to the bank she does not have the right to have his property applied to its payment before hers (or the insurance money) is so applied; and particularly so, where she joins with her husband in signing the note secured by the second purchase-money mortgage.

7. ———: **Rule of Two Funds: Application of Collateral Security: Waiver.** A mortgagee who has the right to compel a bank to exhaust collateral security given for the payment of a note before calling upon mortgage security which is junior to his lien, waives that right by doing nothing to enforce it, but stands by acquiescent while the bank proceeds to foreclose its junior lien. He thereby waives his right to an application of what is known as "the rule of two funds."

8. ———: **Collateral Security: Effectuated Application: Subrogation.** Notwithstanding the mortgagee in a second deed of trust has waived his right to compel the bank, which is the mortgagee in a third deed of trust, to exhaust its collateral security before enforcing its mortgage lien on the

land, he is entitled to be subrogated to the bank's lien on the collateral security, where the bank has applied it to the payment of its note. But the circuit court cannot enforce his right to subrogation where the bank is not a party to the suit and the fund is not in court.

Corpus Juris-Cyc. References: **Marshalling Assets and Securities,** 38 C. J., Section 18, p. 1378, n. 8. **Mortgages,** 41 C. J., Section 203, p. 387, n. 64; Section 448, p. 512, n. 58; Section 450, p. 514, n. 77; Section 470, p. 529, n. 41; Section 532, p. 571, n. 81; 27 Cyc., p. 1565, n. 92; p. 1669, n. 90 New **Subrogation,** 37 Cyc., p. 385, n. 32 New.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

AFFIRMED.

*Clarence A. Barnes* for appellant.

(1) When a court of equity once acquires jurisdiction of a cause, it will retain it to do full and complete justice, and will give the specific relief asked, if proper so to do, or the relief proper under a prayer for general relief. Marston v. Catterlin, 290 Mo. 185. (2) An assignment of a note secured by a deed of trust carries the security with it and the assignee stands in the place of the payee. Boatmen's Savings Bank v. Gewe, 84 Mo. 477; Tee v. Clark, 89 Mo. 553. An assignment of a note secured by collateral, upon the assignment of the debt without the pledge, the assignee will hold the collateral as trustee for his assignee. 31 Cyc. 849. (3) The rule as to marshalling assets or securities, applies between plaintiff and defendants. There are two funds out of which the bank note for $7,000 could be satisfied, and only one fund out of which plaintiff's $15,000 in notes could be satisfied. 1 Jones on Mortgages (6 Ed.) p. 926, sec. 875; Sherron v. Acton, 18 Atl. 978; Herbert v. Mechanics B. & L. Assn., 17 N. J. Eq. 497; Speer v. Home Bank, 200 Mo. App. 269; Paddock Hawly Iron Co. v. McDonald, 61 Mo. App. 559; Dunlap v. Dunseth, 81 Mo. App. 17; Shackleford's Admrs. v. Clark, 78 Mo. 491; Stern berg v. Valentine, 6 Mo. App. 176; 4 Pomeroy's Equity Jur. (3 Ed.) p. 2786, sec. 1414; 1 Pomeroy's Equity Jur. (3 Ed.) p. 655, sec. 396, Boone v. Clark, 129 Ill. 466; Breed v. Nat. Bank of Auburn, 68 N. Y. Supp. 68.

*Rodgers & Buffington* for respondent Householder.

Appellant never had any cause of action against Respondent House-holder. Householder's deed of trust went on record March 2, 1920. The deed of trust first received by appellant went on record October 20, 1921. The deed of trust last received by appellant went on record June 2, 1921. Appellant pleads in his petition that his deeds of

trust are both junior and subject to Householder's $40,000 encumbrance. The deeds when put in evidence by appellant show that they are subject to respondent's deed. The issue in this case, and the only issue, between appellant and Householder being the question of priority of liens on the land in question, in view of appellant's admissions in his petition, the admissions shown in his deeds of trust, his admission shown in the oral evidence, and the cold record as to the actual time of the filing of appellant's and respondent's respective deeds, all to the fact that appellant's lien is secondary and subject to respondent's lien, conclusively demonstrate that in accordance with horn-book law relative to conceded facts and documentary proof the court could have done naught else than was done in finding the issue of priority of liens in favor of Householder and against the appellant.

*Fry & Fry* for respondent A. A. Carpenter.

(1) Neither of Woodard's deeds of trust were recorded when the Bank of Wayland, Iowa, took its mortgage on April 18, 1921. There was no notice to said bank of any such liens, and its officers had no knowledge whatever of such liens. Therefore, neither one of Woodard's deeds of trust could be superior to that of the bank. (2) Householder was the owner of the title to the land and he only could and did convey it and he alone was entitled to the purchase money. A vendor's lien is established and enforced against the land solely for the purchase money, and no one can enforce it except the vendor or his assignee. Pearl v. Harvey, 170 Mo. 167; Adams v. Cowherd, 30 Mo. 458; Briscoe v. Calahan, 77 Mo. 134; Sloan v. Campbell, 71 Mo. 387; Rogers v. Tucker, 94 Mo. 346; Winn v. Lippincott Ins. Co., 125 Mo. 528, 543. (3) At the time of instituting this suit, the decree of the foreclosure had already been entered by which Woodard was cut out, and Woodard had knowledge of said decree. Woodard comes too late after Carpenter's mortgage has been adjudged and the land conveyed to Carpenter. If plaintiff had any equitable rights he has "slept on his rights" and it is now too late. He has a legal remedy against Mrs. Yount for his debt, and he is not entitled to any equitable relief prayed for in his petition. (4) Where there is a surety for a debt which is also secured by mortgage, the creditor has an election whether he shall proceed upon the mortgage or against the surety. 21 R. C. L. 1096; Flournoy v. Sprague, 214 S. W. 183; State ex rel. v. Cryts, 87 Mo. App. 440; Cullum v. Emanuel, 34 Am. Dec. 757; Allen v. Woodard, 28 Am. Rep. 250; Pritchard v. Fruit, 208 Ill. App. 77; Rutz v. Oltman, 168 Ill. App. 437. A surety can make the creditor proceed against the principal's security first, and this can be done where the surety signs the note as a joint maker. Wilcox v. Todd, 64 Mo. 388; Wright v. Austin, 56 Barber (N. Y.) 13; Shep-

pard v. Conley, 9 N. Y. Supp. 777; In re Babcock, 3 Story, 393; Harris v. Newell, 42 Wis. 687; Speer v. Home Bank, 206 S. W. 407; Trentman v. Eldridge, 98 Ind. 525; Garrett v. Burlington Plow Co., 70 Iowa, 697; Thompson v. Spittle, 102 Mass. 207; Mason v. Hull, 55 Ohio St. 256; Stewart v. Stewart, 207 Pa. 59. (5) Carpenter purchased the land under a decree of foreclosure of the mortgage of Yount to the Farmers State Bank of Wayland. While there is a right of redemption of sale of land in this State under a deed of trust, under R. S. 1919, sec. 2222, there is no right of redemption from sale under a decree of foreclosure, as in this case. Ramley v. Peoples Ry. Co., 144 Mo. 190.

RAGLAND, P. J.—This is a suit in equity. The nature of the relief sought can best be described after the facts upon which the right to the relief is predicated have been outlined.

On the 8th day of July, 1919, defendants Harry Householder and Mabel E. Householder, husband and wife, were the owners in fee simple of 640 acres of land: the north half of Section 26 and the north half of Section 27, all in Township 52 of Range 10 west, in Audrain County, Missouri. On that date Harry Householder entered into a written contract with one Duncan whereby he agreed to sell and convey the land to Duncan for a consideration of $64,000, to be paid in the following manner: $2,000 in cash at the time of signing the contract; $17,000 on or before March 1, 1920; a note for $5,000 due March 1, 1920, bearing six per cent per annum interest after due; and a note for $40,000 to be dated March 1, 1920, due March 1, 1925, bearing interest at the rate of five per cent per annum from date, and to be secured by a deed of trust on the land. On July 12, 1919, Duncan agreed in writing to sell and convey the land to plaintiff Woodard for the sum of $70,400; on August 4, 1919, Woodard entered into a contract with Felgar, Siver, Lauger and Walker, wherein he agreed to sell and convey the land to them for $80,000; and on the second day of September, 1919, Felgar, Siver, Lauger and Walker, under the cloak of Woodard's name, contracted in writing to sell the land to I. I. Yount for the sum of $86,400. The contract on its face appeared to be between Woodard and Yount. All of the contracts above referred to were negotiated by one Jennings, a real estate agent at Centralia, Missouri; all of them were drawn by him, the same form of printed blank being used in each instance; each of them provided that it should be consummated on the 1st day of March, 1920, at Jennings's office; and each contained a provision that $40,000 of the purchase price might be carried on the land for a period of five years. On the first day of March, 1920, all the parties above named appeared at Jennings's office for the purpose of closing their several deals. The evidence does not disclose the details of the settle-

ment or settlements had. It appears, however, that by mutual agreement Householder and his wife conveyed by warranty deed directly to Yount, the last purchaser; that Yount executed a note to Householder for $40,000 due five years thereafter and bearing five per cent annual interest from date, together with a deed of trust on the land to secure it; and that Yount also executed three notes, each for $5,000, to Woodard and Felgar, and gave a deed of trust on the land to secure them. This latter deed of trust recited that it was subject to the one given Householder. Yount's wife joined him in executing both deeds of trust, and she signed one of the $5,000 notes. The warranty deed from Householder and wife to Yount was dated March 1, 1920, and was acknowledged on that day. Both deeds of trust were dated February 26, 1920, and were acknowledged as of that date. All three of the deeds, however, were delivered on March 1, 1920, and constituted parts of one transaction, as just stated.

The warranty deed from the Householders to Yount was filed for record February 8, 1921; the deed of trust from Yount to Householder, March 2, 1920; and the deed of trust from Yount to Woodard and Felgar, October 20, 1921. Woodard acquired Felgar's interest in the three $5,000 notes shortly after they were executed. On March 1, 1921, Yount and his wife signed and delivered to Woodard a single note for $15,000, together with a deed of trust on the same land to secure it, in renewal of the three $5,000 notes. It was the understanding, however, between Yount and Woodard that the former would pay in cash the interest which had accrued on the $5,000 notes up to the date of the renewal note, and the latter note was accepted by Woodard upon that express condition. The condition was never complied with and as a consequence the $5,000 notes remained subsisting obligations. Plaintiff in his bill tenders the $15,000 note for cancellation. As it has no bearing on the real issues in the case it will not be further noticed. In all of the deeds above mentioned there was a misdescription of the land. It was described as being in Range 11, whereas, it was in Range 10.

Yount and his wife, defendant Edith M., were residents of Henry County, Iowa. On the 18th day of April, 1921, they executed to the Farmers State Bank of Wayland, Iowa (hereinafter called the bank), a note for $7,000, together with a mortgage on the land in controversy to secure its payment. In the mortgage deed, which was filed for record April 21, 1921, the land was correctly described as in Range 10. The $7,000 note was given in renewal of an old note of Yount's to the bank for a like amount, and was payable March 1, 1922. In addition to the mortgage, the Younts pledged to the bank as further security a $5,000 policy of insurance issued on his life by the Des Moines Life & Annuity Company, in which Mrs. Yount was the beneficiary, and also five shares of stock of the bank of the par value of

$100 each and two shares of stock in an elevator company of like par value. These shares of stock were the property of Yount. At the time of this transaction, according to the testimony of Mr. Hileman, the cashier of the bank, "Mr. Yount stated that in case of his death he would want us (the bank) to exhaust the other security before applying the life insurance." In further explanation of this incident Hileman testified: "We had no written agreement, nothing more than simply an oral request on his part to do that, and we simply consented that we would be willing to do that if we would be able to collect on the other security." On the 8th or 9th of June, 1921, Yount died, and on or about the first of July following, the insurance company paid to the bank the face of the policy of insurance which had been pledged to the bank, less some small deductions for past due premiums. The sum so collected the bank converted into a certificate payable to its cashier, "with the citation thereon that it was held as collateral security for the payment of the note of I. I. Yount." Following the collection of the policy by the bank Mrs. Yount made a demand on the bank that it exhaust the other security given it before applying any of the insurance money to the payment of the $7,000 note.

On January 16, 1922, the bank entered into a written contract with the defendant, A. A. Carpenter, wherein the bank agreed, in consideration of the payment of $5.000 to be made to it by Carpenter, to assign to Carpenter its $7,000 note and mortgage. The contract recited, among other things:

"The consideration mentioned above shall be taken care of in the following manner, to-wit:

"Three thousand dollars shall be paid to first party in cash, when the court has approved the new papers which shall be executed to clear up the title to said land or when the necessary legal procedure is completed to clear the title to the extent that said real estate shall have the following incumbrances only: $40,000 mortgage to Harry Householder, $7,000 mortgage to Farmers State Bank, Wayland, Iowa. . . .

"This contract shall be in full force and effect when the said Harry Householder shall have entered into an agreement with the second party hereto binding himself to continue to carry for a period of three years from March 1, 1922, the $40,000 mortgage against said property when the title is cleared up as hereinbefore mentioned.

"It is specifically agreed and understood that said bank is not by this contract bound or holden as to the clearing up of the title so far as same shall be affected by a third mortgage, the intention being to bind said bank to assign its rights only accruing unto it by virtue of said $7,000 mortgage."

The officers of the bank testified that at the time the $7,000 mortgage was given by Yount they were advised of the $40,000 deed of trust held by Householder, but had no knowledge of any other lien on the land; that they supposed the bank was getting a second mortgage, and there was no showing to the contrary. But it does appear from the evidence that both the bank and Carpenter, at the time of the making of the contract last referred to, knew that an outstanding mortgage was held by Woodard, which because of Woodard's failure to promptly record it they deemed junior to that of the bank.

On February 3, 1922, Carpenter, alleging that he was the owner and holder of the $7,000 note, filed in the Circuit Court of Audrain County a suit to foreclose the mortgage given to secure it. In his bill he also set forth that through mistake the land intended to be conveyed had been misdescribed in both the warranty deed from Householder to Yount and the deed of trust given back by Yount to Householder; he prayed a reformation of these deeds. The parties defendant to the suit were the two Householders, the widow and heirs of I. I. Yount, deceased, and the administrator of his estate. Woodard was not made a party. A decree was rendered on the 8th day of April, 1922, in conformity with the prayer of the bill. The deeds were reformed and the Householder $40,000 deed of trust was adjudged to be a first lien, the bank mortgage was foreclosed and the land ordered sold subject to the lien just mentioned. At the foreclosure sale Carpenter became the purchaser.

Before bringing the action just described Carpenter conferred with Harry Householder with reference thereto, and, in so far as the latter's interests were involved in it, it was what plaintiff's counsel correctly designates as a "friendly suit."

The foreclosure suit was followed immediately by the present proceeding, and at the time of the trial of the cause the bank was still holding all of the collateral given it to secure the $7,000 note—the insurance in the form heretofore described.

Plaintiff after setting out the facts at length in his bill prayed that his deed of trust be reformed as to the description of the land and that it be adjudged a first lien on the land; that the decree in the foreclosure suit of Carpenter v. Yount et al., be set aside; that the respective interests of the parties be ascertained and adjudged: and that he have general relief. The trial court found the issues for the defendants and dismissed his bill. From that judgment he prosecutes this appeal.

The questions raised and discussed in the printed briefs and the oral arguments of the parties may be disposed of under three heads: (1) Priority with reference to the liens of the Householder and Woodard deeds of trust and the bank's mortgage; (2) the marshalling of assets with reference to the securities given by Yount to

Woodard and the bank; and (3) Woodard's right, if any, to subrogation. ·

I.  1.  It is difficult to perceive any theory upon which it can be held that the Woodard deed of trust has, or should be given, priority over the Householder deed of trust, because the former on its face recites that it is subject to the latter. It is suggested **Priority.** rather than argued that Householder in co-operating with Carpenter in bringing the suit to foreclose the bank's mortgage in some way committed a wrong against Woodard, and that by reason thereof his lien should be postponed to that of Woodard's. But neither Householder nor Carpenter deprived Woodard in the foreclosure proceeding of a single right. The latter was not made a party to the suit and consequently the decree rendered therein did not affect him in any respect. Appellant complains because he was not made a party; while he would have been a proper party, he was not a necessary party. The purpose of the suit was to foreclose the equity of redemption; assuming that Woodard's lien was junior to that of the bank's, he was an owner in part of the equity of redemption, and that was not cut off by the decree. He still has the right to redeem. [Valentine ·v. Havener, 20 Mo. 133; Stafford v. Fizer, 82 Mo. 393; Williams v. Brownlee, 101 Mo. 309.]

2.  There can be no doubt but that the Woodard deed of trust falls within the designation of a purchase-money mortgage. Householder was not the sole vendor; while he owned the **Purchase-Money** legal title and a large beneficial interest in the **Mortgage.** land, the subsequent purchasers, including Woodard and Felgar, owned equitable interests · therein. Yount, the last purchaser, bought the interests of all, and the purchase money paid by him was apportioned among all the owners according to their respective contract rights. The conveyance to Yount and the adjustment and division among the parties of the money and securities going to make up the purchase money, including the notes and deed of trust to Woodard and Felgar, constituted but a single transaction.

It may be said in a general way that, apart from the recording acts, the lien of a purchase-money mortgage takes precedence over all other liens or interests which may attach to the land, either contemporaneously with the passing of the title to the vendee, or subsequently. [Morris v. Pate, 31 Mo. 315; Rogers v. Tucker, 94 Mo. 346; Demeter v. Wilcox, 115 Mo. 634.] But the Woodard deed of trust, notwithstanding that it was a purchase-money mortgage, under the facts disclosed by the evidence, comes within the purview of Section 2200, Revised Statutes 1919, which provides: ''No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be de-

posited with the recorder for record.'' It was given on March 1, 1920, but not filed for record until October 20, 1921. In the meantime, on April 18, 1921, the bank without any notice of its existence accepted a mortgage on the same land to secure an indebtedness of $7,000. It is true that that indebtedness was a pre-existing one, but the extension of time given for its payment constituted a valuable consideration for the mortgage. By virtue of the statute, therefore, the lien of the Woodard deed of trust was postponed to that of the bank's mortgage. [Trigg v. Vermillion, 113 Mo. 230; Jackson v. Reid, 30 Kan. 10.]

II. It is next urged by appellant that, as the bank had two securities which it could look to for the satisfaction of its debt—the mortgage on the Missouri land and the proceeds of **Exhaustion of** the life insurance policy—and he as the holder of the **Collateral** junior mortgage on the land had only the one, it was **Security.** the duty of the bank to have applied the insurance money to the payment of its debt before proceeding to foreclose its mortgage. In response to this contention the respondents urge: first, that the insurance was pledged to the bank by Yount with the distinct understanding that the mortgage security should be exhausted before any appropriation was made of it; and, second, that Mrs. Yount, being merely the surety of her husband on the note to the bank, had the right to have his property applied to its payment before hers was called upon. In considering the first of these propositions it must be borne in mind that Yount at the time he gave the mortgage to the bank knew that there were two outstanding purchase-money mortgages on the land; he knew that the mortgage he was giving to the bank was a third mortgage; that must therefore have been the character of the security he intended that the bank should exhaust before making application of the insurance money. In support of their second proposition respondents cite Wilcox v. Todd, 64 Mo. 388. But the facts of that case are wholly different from those in the case at bar. Mrs. Yount's equity is not superior to that of Woodard's. So far as she is concerned the lien of the Woodard deed of trust takes precedence over that of the bank's mortgage. As to her it is the superior lien. Not only that, but she herself is directly obligated for the payment of one of the $5,000 notes secured by the Woodard deed of trust. She is in no better position than her husband would be, if living, to demand that the bank exhaust the mortgage security in satisfaction of its debt and exonerate the insurance fund.

But although the appellant had the right in equity to have compelled the bank to exhaust the collateral security given for the

payment of its note before calling upon the mortgage security as to
**Waiver.** which his was the junior lien, he did nothing looking to
the enforcement of that right, but stood by acquiescent
while the bank proceeded to foreclose its mortgage. He thereby
waived his right to the application of what is known as "the rule of
two funds." [Sheldon on Subrogation (2 Ed.) sec. 66a; St. Joseph
Mfg. Co. v. Daggett, 84 Ill. 556; Turner v. Flynn, 67 Ala. 529.]

III. Notwithstanding appellant waived his right to compel the
bank to exhaust the collateral security for the satisfaction of its
debt before enforcing its mortgage on the land, he is not remediless.
"If a prior creditor of two funds satisfies his demand out of that
fund which alone is pledged to a junior creditor, and thereby ex-
hausts that fund, equity will subrogate the latter creditor to the form-
er's lien upon that fund which is not exhausted." [Shelton on Sub-
rogation (2 Ed.) sec. 62; Hawkins v. Blake, 108 U. S. 422.] Now
the evidence tends to show that the bank's $7,000 note had been
reduced to $5,000 prior to its assignment to Carpenter. It is clear
from a reading of the contract entered into between the bank and
Carpenter that the assignment of the note did not carry with it the
bank's lien on the insurance money, but that upon Carpenter's pay-
ment of the consideration for the assignment as provided in the con-
tract the insurance fund should be exonerated from the lien. The
bank, however, is still holding on to that fund, awaiting apparently
the eventualities of this litigation. All of the contingencies upon
which Carpenter's promise to pay the bank $5,000 for the note was
dependent have come to pass, consequently, the bank has received
full satisfaction out of the real estate mortgage. It would seem
therefore that under the equitable doctrine just stated the appellant
is entitled to be subrogated to the bank's lien on the insurance money.
But this right the Circuit Court of Audrain County is without power
to enforce. The bank is not a party to this proceeding, nor is the
fund in court.

As the circuit court is without jurisdiction to grant appellant the
only substantial relief to which the evidence shows him entitled, its
judgment should be affirmed. It is so ordered. All concur, except
*Graves, J.,* absent.