**SUTTON FUNDING, LLC,**
**Plaintiff/Appellant,**

v.

**Forrest MUELLER, et al.,**
**Defendants/Respondents.**

**No. ED 91458.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 3, 2009.

Robert E. Jones, St. Louis, MO, for appellant.

E. Darrell Davis, St. Charles, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Sutton Funding, LLC ("Sutton") appeals from the judgment of the trial court that gave priority to a judgment lien against the vendee of real property over a purchase money deed of trust given for the real property. The trial court found that Mid–Am Investments, Inc. ("Mid–Am") holds fee simple title to Lot 93 of Dardenne Landing in St. Charles County, Missouri ("the Property"), subject only to the lien of the Missouri Division of Employment Security ("MDES") for a judgment against Forrest Mueller ("Mueller"), with all other liens extinguished, and denying Sutton's other claims. We reverse and remand.

Mid–Am and Sutton agreed to a stipulated set of facts at trial. The stipulated facts that are relevant to the issues on appeal are as follows. On January 23, 2002, Taylor–Mueller Homes, LLC ("Taylor–Mueller"), acquired fee simple title to the Property. Taylor–Mueller encumbered the Property with a deed of trust to Allegiant Bank ("Allegiant DoT") on February 11, 2002, which gave Allegiant the first lien on it.[1] The successor trustee foreclosed the Allegiant DoT on April 15, 2004. Kratky Road, Inc. was the successful bidder at the foreclosure sale. Fee simple to the Property vested in Kratky.

On June 10, 2004, the circuit court of St. Charles County, Missouri, rendered a judgment in favor of SJSM, LLC ("SJSM Judgment") against Taylor–Mueller, Mueller as an individual, and several others in the amount of $865,500.00.[2] Kratky conveyed the Property to KTC, Inc. on August 18, 2004 by special warranty deed ("KTC Deed"), and KTC contemporaneously encumbered the Property with a deed of trust in favor of Bank Star ("Bank Star DoT"). Both documents were recorded on December 10, 2004. On May 31, 2005, KTC conveyed the Property to Mueller by a general warranty deed, which was subsequently recorded on June 6, 2005. Mueller's purchase of the Property was financed by ResMae Mortgage Company, for which Mueller gave ResMae a deed of trust in the amount of $216,750.00, which deed of trust was subsequently assigned to Sutton Funding, LLC ("Sutton DoT"). The Sutton DoT was dated May 31, 2005 and recorded contemporaneously with the general warranty deed to Mueller. On May 31, 2005, Mueller also gave a second deed of trust for the Property to Mid–Am ("Mid–Am DoT"). The Bank Star DoT was released as part of these transactions, with a release deed dated June 1, 2005, which was recorded June 15, 2005. The

1. A deed of release from Allegiant dated June 25, 2002, was mistakenly filed and recorded on July 12, 2002.

2. Prior to the SJSM Judgment, the Missouri Division of Employment Security was granted a civil judgment against Mueller on January 12, 2004 in the amount of $489.71. The record does not indicate the basis of this civil judgment.

Bank Star DoT was paid off with loan proceeds secured by the Sutton DoT. On June 23, 2005, Mueller conveyed the Property to Chesterfield West, LLC by a quitclaim deed signed by all parties to the deed on June 23, 2005, and recorded that same date.

On June 8, 2006, SJSM assigned the SJSM Judgment to Mid–Am, and Mid–Am initiated proceedings to enforce the SJSM Judgment lien. On August 9, 2006, the Sheriff of St. Charles County recorded a Notice of Levy on Real Estate on the Property, and on November 2, 2006, the St. Charles County Circuit Court approved a Sheriff's Deed that conveyed the Property to Mid–Am.

The Sutton DoT, which was held by ResMae, was assigned to DLJ Mortgage Capital, Inc. by an assignment recorded on March 27, 2008. DLJ in turn assigned the Sutton DoT to Sutton on April 4, 2008. Sutton filed a Second Amended Petition for Quiet Title, Judicial Foreclosure and Reformation. In it, Sutton alleged that Mid–Am held fee simple title to the Property, subject to the Sutton DoT holding a position of first priority. In its amended judgment of August 27, 2008, the trial court found that a deed of release from Allegiant dated June 25, 2002, and recorded on July 12, 2002, was filed by mistake, and it declared that deed to be null, void, and of no effect. The trial court further found that Mid–Am holds fee simple title to the Property, subject only to the lien of MDES for a civil judgment against Mueller, originally granted in the amount of $489.71 on January 12, 2004, with all other liens extinguished. It denied the other claims of Sutton's Second Amended Petition.

Sutton now appeals from this judgment.

In its sole point relied on, Sutton contends that the trial court erred in finding that the Mid–Am's lien as assignee of the SJSM Judgment against Mueller took priority over the Sutton DoT. Sutton avers that because the Sutton DoT is a purchase money deed of trust, it accordingly takes priority over a lien based on a pre-existing judgment against Mueller.

■ We review a bench-tried case under the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless it is not supported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

■ "[A] mortgage or deed of trust given to secure the purchase price of land, and executed simultaneously with the deed to the purchaser, takes precedence and priority over liens created by the grantee prior to his acquisition of title." *Ellsberry v. Duval–Percival Trust Co.,* 220 Mo.App. 239, 282 S.W. 1054 (1926) (*citing Wendler v. Lambeth,* 163 Mo. 428, 63 S.W. 684 (1901). *See also Woodard v. Householder,* 315 Mo. 1155, 289 S.W. 571, 574 (1926)). According to the Restatement (Third) Property (Mortgages) section 7.2(a), "[a] 'purchase money mortgage' is a mortgage given to a vendor of the real estate or to a third party lender to the extent that the proceeds of the loan are used to: (1) acquire title to the real estate; . . . ." (Emphasis added). The Restatement goes on to state that:

(b) A purchase money mortgage, whether or not recorded, has priority over any mortgage, lien, or other claim that attaches to the real estate but is created by or arises against the purchaser-mortgagor prior to the purchaser-mortgager's acquisition of title to the real estate.

(c) A purchase money mortgage given to a vendor of real estate, in the absence of a contrary intent of the parties to it and subject to the operation of the re-

cording acts, has priority over a purchase money mortgage on that real estate given to a person who is not its vendor.

Missouri law is in accord with section 7.2 of the Restatement (Third) Property (Mortgages).[3] *See Woodard,* 289 S.W. at 574; *Wendler,* 63 S.W. at 686–87; *Ellsberry,* 282 S.W. at 1054.

■ The stipulated facts show that the Sutton DoT is a purchase money mortgage by a third party lender. ResMae loaned the money to Mueller, who used it to purchase the Property, which included paying off the Bank Star DoT. The Sutton DoT was assigned from ResMae to DLJ Mortgage, and subsequently from DLJ Mortgage to Sutton. This, however, does not alter the priority of the Sutton DoT, as an assignment vests the rights and interests of the assignor in the assignee. *See Miller v. Dannie Gilder, Inc.,* 966 S.W.2d 397, 399 (Mo.App.1998).

■ Mid–Am contends that it is entitled to priority over the Sutton DoT through the assignment of the SJSM Judgment to it, citing to section 511.360 RSMo (Cum. Supp. 2004). This section states in part that:

> The lien of a judgment or decree shall extend as well to the real estate acquired after the rendition thereof, as to that which was owned when the judgment or decree was rendered. Such

liens shall commence on the day of the rendition of the judgment, . . .

Contrary to the assertions of Mid–Am, this statute does not give a prior judgment lien priority over a purchase money mortgage given to a third party lender. It does not address the issue of a conflict of priorities between a judgment lien holder and a subsequent purchase money mortgage given to a lender, whether it be the vendor or a third party lender. Rather, it merely states that a judgment lien applies to after-acquired real estate, which prevents a judgment debtor from circumventing justice by using assets to buy real property after a judgment. There is no case law that stands for the interpretation of this statute that Mid–Am imputes to it. Further, we note the exact same language was used in section 6012 RSMo 1889 and section 3714 RSMo 1899, predecessor statutes of section 511.360 RSMo (Cum. Supp. 2004). Such language did not prevent the Missouri Supreme Court from stating in *Wendler,* 63 S.W. at 686 "that it was but common legal learning that a mortgage for the purchase money executed simultaneously with the deed to the purchaser takes precedence and priority over liens created by the vendee prior to his acquisition of the title, or before he had paid the purchase money." (citing *Turk v. Funk,* 68 Mo. 18 (Mo.1878)). Section 1556 RSMo. 1919, which was in force at the time of the decisions in *Woodard* and *Ellsberry,* and contained identical language to that quoted

3. The Comments to this section of the Restatement discuss the policy reasons for this "long-established rule" at some length. It is noted in part that:

> Because third party lending is the dominant source of purchase money land financing in this country, a rule which facilitates such lending is especially beneficial to the national real estate economy. Applying this rule to benefit third party lenders is plainly fair. While it is true that such lenders, unlike vendors, do not give up ownership of specific real estate, they nevertheless part with money with the expectation that they will have security in that real estate. Without this advance of money, the purchaser-mortgager would never have received the property and the other claimants would never have had the opportunity to satisfy their claims from such a convenient source. As in the vendor purchase money context, this section seeks to avoid conferring a windfall on those claimants.

above from section 511.360 RSMo (Cum. Supp. 2004), did not deter the appellate courts in those cases from stating the priority of purchase money mortgages over other liens and interests. Section 511.360 RSMo (Cum. Supp. 2004) does not give Mid–Am's judgment lien priority over the Sutton DoT.

Mid–Am cites to a number of cases for its proposition that Missouri does not follow the rule of law that any purchase money mortgage takes priority over other pre-existing loans. It states that the "most modern" statement of the law is set forth in *Rothermich v. Weber's St. Charles Lanes*, 957 S.W.2d 509 (Mo.App.1997), and is "substantially different" from the "venerable" statements of Missouri courts in *Wendler* and *Woodard*. As Mid–Am quotes in its brief, in *Rothermich*, 957 S.W.2d at 511, "[a] vendor's purchase money deed of trust takes priority over a third party's purchase money deed of trust even if the third party's deed of trust is recorded first." (*citing Rader v. Dawes*, 651 S.W.2d 629, 631 (Mo.App.1983)). We agree that a vendor's purchase money mortgage or deed of trust takes priority over a third party's purchase money mortgage or deed of trust, even if the latter's lien is recorded first. This does not represent a sea-change in the law from *Wendler*, *Woodard*, or *Ellsberry*. All that this stands for is that if there are competing purchase money mortgages or purchase money deeds of trust, a vendor's purchase money mortgage or deed of trust will have a priority over that of a third party lender. In the case before this Court, there is no vendor's purchase money deed of trust involved or competing with the Sutton DoT for priority. These cases, and those cited by Mid–Am in that section of the argument portion of its brief do not stand for the principle that a prior existing judgment lien against a vendee takes priority over a purchase money deed of trust.

*Woodard* bears some attention, as Mid–Am cites it for a different result than does Sutton, which also relied on that case in its brief. Mid–Am quotes the following language:

It may be said in a general way that, apart from the recording acts, the lien of a purchase-money mortgage take[s] precedence over all other liens or interests which may attach to the land, either contemporaneously with the passing of the title to the vendee, or subsequently. But the Woodard deed of trust, notwithstanding that it was a purchase-money mortgage, under the facts disclosed by the evidence, comes within the purview of section 2200, R.S.1919, which provides:

"No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record."

It was given on March 1, 1920, but not filed for record until October 20, 1921. In the meantime, on April 18, 1921, the [Farmers' State] Bank without any notice of its existence accepted a mortgage on the same land to secure an indebtedness of $7,000 . . . . By virtue of the statute, therefore, the lien of the Woodard deed of trust was postponed to that of the [Farmers' State] Bank's mortgage.

*Woodard*, 289 S.W. at 574 (citations omitted). Following this quote, Mid–Am asserts that "[t]his ruling is a direct contravention of the proposition of Sutton." We note that Mid–Am, using ellipses, omitted the following sentence from its quotation from *Woodard:* "It is true that the indebtedness [to Farmers' State Bank] was a pre-existing one, but the extension of time given for its payment constituted a valuable consideration for the mortgage." The holding on this issue was carefully tailored

to the facts of that case. If the purchase money mortgage had been promptly recorded, the Farmers' State Bank would have had at least constructive notice of its existence, and could have chosen not to accept the property as security. Moreover, even though the $7,000 indebtedness was a pre-existing obligation, the mortgage given to the Farmers' State Bank was a specific lien created subsequent to the creation of the Woodard purchase money deed of trust, not a pre-existing lien. *Woodard* does not stand for the proposition that a pre-existing lien against a vendee takes priority over a purchase money mortgage or deed of trust.

Mid–Am also discusses why it believes that it is not inequitable to give a judgment creditor a higher priority than a purchase money mortgage or deed of trust. The cases cited by Mid–Am are inapposite as this is not a matter of equitable subrogation, but rather is the issue of the priority of purchase money mortgages or deeds of trust.

We sustain Sutton's sole point relied on. We hold that the Sutton DoT, which is a purchase money deed of trust, has priority over the SJSM Judgment lien, a pre-existing lien against the vendee of the Property, Mueller. Accordingly, Mid–Am owns the Property in fee simple subject to the liens of the Sutton DoT and MDES. The judgment of the trial court is reversed and remanded with instructions to enter an amended judgment in accordance with the holding of this Court.

ROBERT G. DOWD, JR., P.J., and SHERRI B. SULLIVAN, J., concur.